EVAN R. MOSES CA Bar No. 198099
evan.moses@ogletree.com
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
400 South Hope Street, Suite 1200
Los Angeles, CA 90071
Telephone: 213.239.9800
Facsimile: 213.239.9045

Attorneys for Defendant
PENSKE TRUCK LEASING Co., L.P.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANGEL ZAMORA, GABRIEL LOAIZA, and JORGE GUILLEN, individuals, on behalf of themselves and on behalf of all other persons similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>PENSKE TRUCK LEASING CO., L.P., a Limited Partnership; and DOES 1-50, inclusive,<br><br>Defendants. | Case No. 2:20-cv-2503<br>_____<br><br>**DEFENDANT'S NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT PURSUANT TO 28 U.S.C. §§ 1332, 1441, 1446 AND 1453**<br><br>[Filed concurrently with Declarations of Jennifer Diercksmeier and Evan Moses, Certification of Interested Entities or Persons, Corporate Disclsoure, and Civil Cover Sheet]<br><br>Complaint Filed: January 31, 2020<br>Trial Date: None |

**TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, AND TO PLAINTIFF AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** defendant Penske Truck Leasing Co., L.P. ("Defendant") removes this action from the Superior Court of the State of California for the County of Los Angeles, to the United States District Court for the Central District of California pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453. As discussed below, this Court has original jurisdiction over this matter pursuant to the Class Action Fairness Act ("CAFA").

## I. THE STATE COURT ACTION

1. On or about January 31, 2020, plaintiffs Angel Zamora, Gabriel Loaiza, and Jorge Guillen ("Plaintiffs") filed a Class Action Complaint ("Complaint") in the Superior Court of the State of California, County of Los Angeles, entitled *Angel Zamora, Gabriel Loaiza, and Jorge Guillen, individuals, on behalf themselves and on behalf of all persons similarly situated, Plaintiffs, v. Penske Truck Leasing, Co., L.P.; and Does 1-50, inclusive, Defendants*, which was assigned case number 20STCV04055 (the "State Court Action").

2. On February 14, 2020, Plaintiffs served Defendant with a copy of the Complaint, as well as other documents filed in the State Court Action, through its agent for service of process. Declaration of Evan Moses ("Moses Decl.") ¶ 2. A true and correct copy of the Complaint is attached as **Exhibit A** to this Notice of Removal.

3. Plaintiff has not yet identified any of the fictitious "Doe" defendants identified in the First Amended Complaint and the citizenship of "Doe" defendants is disregarded for the purposes of removal. 28 U.S.C. § 1441(a); *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987).

4. <u>This Notice is Timely</u>. This Notice of Removal is timely filed as it is filed less than one year from the date this action was commenced and within 30 days of the service upon Defendant. 28 U.S.C. § 1446(b); *Murphy Bros., Inc. v. Michetti*

*Pipe Stringing, Inc.*, 526 U.S. 344 (1999) (30-day deadline to remove commences upon service of the summons and complaint).

## II. JURISDICTION UNDER THE CLASS ACTION FAIRNESS ACT

5. This action is one over which this Court has original jurisdiction under CAFA and is one which may be removed by Defendant pursuant to 28 U.S.C. §§ 1441 and 1453, because the number of potential class members exceeds 100, the parties are citizens of different states, and the amount in controversy exceeds the aggregate value of $5,000,000.  *See* 28 U.S.C. §§ 1332(d)(2) and (d)(6).[1]

### A. The Size of the Putative Class Exceeds 100

6. In the Complaint, Plaintiffs define the proposed class as: "All individuals who are or previously were employed by DEFENDANT in California as non-exempt employees (the "CALIFORNIA CLASS") at any time during the period beginning on the date four (4) years prior to the filing of this Complaint and ending on the date as determined by the Court (the "CALIFORNIA CLASS PERIOD")."  Ex. A, ¶ 6.

7. Defendant's employment records show that there are at least 2,897 current and former employees who fall within Plaintiffs' proposed class.  Declaration of Jennifer Diercksmeier ("Diercksmeier Decl."), ¶ 13.

### B. The Parties Are Diverse

8. <u>Citizenship of Defendant</u>.  Pursuant to 28 United States Code § 1332(c), "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business."  The United States Supreme Court established the proper test for determining a corporation's principal place of business for purposes of diversity jurisdiction in *The Hertz Corp. v. Friend*, 130 S. Ct. 1181 (2010).  The Supreme Court concluded that the "'principal place of business' is best read as referring to the place where a corporation's officers

---

[1] Defendant is the only named defendant in this matter and, thus, there are no other defendants to consent to removal.  Furthermore, an action may be removed by a single defendant under CAFA without the consent of the other defendants.  *See* 28 U.S.C. § 1453(a).

direct, control, and coordinate the corporation's activities." *Id.* at 1184. The Court further clarified that the principal place of business is the place where the corporation "maintains its headquarters – provided that the headquarters is the actual center of direction, control, and coordination." *Id.*

9. For purposes of citizenship of Defendant, "courts look through the form of such a business entity to the citizenship of all the members of the partnership." *Carden v. Arkonma Assocs.*, 494 U.S. 185, 187-96 (1990).

10. Defendant was, at the time of the filing of this action, and still is, a limited partnership formed under the laws of the State of Delaware. Diercksmeier Decl., ¶ 2. Its principal place of business was, at the time of the filing of this action, and still is, in the State of Pennsylvania. Diercksmeier Decl., ¶¶ 7-10. Defendant's principal place of business and of current operations is located in the state of Pennsylvania because its headquarters, and its executive and senior management personnel, as well as its primary management operations, are located in Pennsylvania. *See Davis v. HSBC Bank Nevada, N.A.*, 557 F.3d 1026 (9th Cir. 2009) (stating that a limited partnership is a citizen of (1) the state under whose laws it is organized or incorporated; and (2) the state of its "principal place of business," with the state of the principal place of business being either where a substantial predominance of corporate operations occur or where the majority of the partnership's executive and administrative functions are performed).

11. The members of Defendant are: (1) Penske Corporation; (2) Penske Automotive Group; and (3) Mitsui & Co., Ltd. Diercksmeier Decl., ¶ 3.

12. At all times on or after the date this action was filed, Penske Corporation has been a citizen of the states of Michigan and Delaware. Penske Corporation has its principal place of business in Bloomfield, Michigan, as that is the location of its headquarters from which its officers direct, coordinate, and control its business operations. Diercksmeier Decl., ¶ 4. In addition, Penske Corporation is incorporated in the State of Delaware. *Id.* Penske Corporation is neither incorporated in California,

nor does it have a principal place of business in California. *Id.* Accordingly, for purposes of determining diversity, Penske Corporation is regarded as a citizen of Michigan and Delaware, and not a citizen of California.

13. At all times on or after the date this action was filed, Penske Automotive Group has been a citizen of the states of Michigan and Delaware. Penske Automotive Group has its principal place of business in Bloomfield, Michigan, as that is the location of its headquarters from which its officers direct, coordinate, and control its business operations. Diercksmeier Decl., ¶ 5. In addition, Penske Automotive Group is incorporated in the State of Delaware. *Id.* Penske Automotive Group is neither incorporated in California, nor does it have a principal place of business in California. *Id.* Accordingly, for purposes of determining diversity, Penske Automotive Group is regarded as a citizen of Michigan and Delaware, and not a citizen of California.

14. At all times on or after the date this action was filed, Mitsui & Co., Ltd. has been a citizen of Japan. Mitsui & Co., Ltd. has its principal place of business in Tokyo, Japan, as that is the location of its headquarters from which its officers direct, coordinate, and control its business operations. Diercksmeier Decl., ¶ 6. In addition, Mitsui & Co., Ltd. is incorporated in Japan. *Id.* Mitsui & Co., Ltd. is neither incorporated in California, nor does it have a principal place of business in California. *Id.* Accordingly, for purposes of determining diversity, Mitsui & Co., Ltd. is regarded as a citizen of Japan, and not a citizen of California.

15. Therefore, for diversity jurisdiction, Defendant is a citizen of Delaware, Michigan, Pennsylvania, and Japan and complete diversity exists as between Plaintiff and Defendant. 28 U.S.C. § 1332.[2]

16. <u>Citizenship of Plaintiffs and putative class members</u>. For diversity purposes, an individual is a "citizen" of the state in which he is domiciled. *Kantor v.*

---

[2] The citizenship of fictitiously named "Doe" defendants is disregarded for purposes of removal. 28 U.S.C. § 1441(a); *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987).

*Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983). An individual's domicile is the place he resides with the intention to remain or to which he intends to return. *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001).

17. Although the Complaint does not state Plaintiffs' residences, it alleges that the Plaintiffs were employed Defendant in California. Likewise, Defendant's employment records confirm that throughout their employment with Defendant and continuing through the present, all three Plaintiffs have lived in the State of California, including the home addresses that Plaintiffs provided for payroll purposes and the addresses shown on Plaintiffs' driver's license, which were issued by the State of California. Diercksmeier Decl., ¶ 12. Thus, Plaintiffs are citizens of the State of California.

18. Members of the proposed class, who by definition are or were employed in California, are presumed to be primarily citizens of the State of California. *See, e.g., Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986) ("place of employment" an important factor weighing in favor of citizenship). Thus, even if Plaintiffs were somehow citizens of Michigan, Pennsylvania, or Delaware (and there is no evidence that they are), there is no possible way that the thousands of putative class members, all of whom worked in California (Ex. A, ¶ 6), were also citizens of Michigan, Pennsylvania, or Delaware.

19. Accordingly, the minimal diversity of citizenship requirements under 28 U.S.C. § 1332(d)(2) are met.

### C. The Amount in Controversy Exceeds an Aggregate of $5,000,000

20. In alleging the amount in controversy for purposes of removal, Defendant does not concede in any way that the allegations in the Complaint are accurate, or that Plaintiffs are entitled to any of the penalties alleged in the Complaint. Nor do Defendants concede that any or all of their other current or former employees are entitled to any recovery in this case, or are appropriately included in the putative class.

21. The Complaint alleges, unsupported by any factual allegations or evidence, that "[t]he amount in controversy for the aggregate claim of CALIFORNIA CLASS Members is under five million dollars ($5,000,000.00)." (Ex. A, ¶ 6.) But Supreme Court and Ninth Circuit precedent expressly requires district courts to "look beyond the four corners of the complaint" when the complaint seeks to bind absent class members by including allegations to avoid federal jurisdiction. *Rodriguez v. AT & T Mobility Servs. LLC*, 728 F.3d 975, 981 (9th Cir. 2013) (citing *Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345, 185 L. Ed. 2d 439 (2013)).

22. Pursuant to *Standard Fire* and *Rodriguez*, the plaintiff is no longer "master of the complaint" such that he or she can "avoid federal jurisdiction by forgoing a portion of the recovery on behalf of the putative class." *Rodriguez*, 728 F.3d at 981. For the same reason, Plaintiff's conclusory and erroneous amount-in-controversy allegation cannot defeat federal jurisdiction. Defendants seeking removal of a putative class action pursuant to CAFA need only to demonstrate by a preponderance of the evidence that the jurisdictional thresholds are met. *See id*.

23. In order to remove a class action pursuant to CAFA, the amount in controversy must exceed $5,000,000, and it is the removing party's burden to establish, "by a preponderance of evidence, that the aggregate amount in controversy exceeds the jurisdictional minimum." *Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 981 (9th Cir. 2013). To do so, the removing defendant must "produce underlying facts showing only that it is *more likely than not* that the amount in controversy exceeds $5,000,000.00, assuming the truth of the allegations plead in the Complaint." *Muniz v. Pilot Travel Ctrs. LLC*, No. CIV. S-07-0325 FCD EFB, 2007 WL 1302504, at *5 (E.D. Cal. May 1, 2007) (emphasis in original).

24. In determining the amount in controversy for CAFA, all potential damages based on the claims in the complaint, as well as attorney's fees, are included. *Guglielmino v. McKee Foods Corp*., 506 F.3d 696, 701 (9th Cir. 2007) (unspecified attorney's fees are appropriately counted toward the amount in controversy in CAFA

removal actions); *Fong v. Regis Corp.*, 2014 WL 26996 (N.D. Cal. Jan. 2, 2014); *Korn v. Polo Ralph Lauren Corp.*, 536 F.Supp.2d 1199, 1205 (E.D. Cal. 2008) ("The ultimate inquiry is what amount is put 'in controversy' by the plaintiff's complaint, not what a defendant will actually owe"); *Muniz v. Pilot Travel Centers LLC*, 2007 WL 1302504, at *3 (E.D. Cal. May 1, 2007) (slip copy) ("In measuring the amount in controversy, a court must assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiff on all claims made in the complaint."); *Sanchez v. Wal-Mart Stores, Inc.*, 2007 WL 1345706, at *2 (E.D. Cal. May 8, 2007) (slip copy) (holding that, in a CAFA action, attorney's fees are part of the amount in controversy); *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F.Supp.2d 993, 1001 (C.D. Cal. 2002).

25.　Furthermore, "[i]n considering whether the amount in controversy is clear from the face of the complaint, a court must assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiff on all claims made in the complaint." *Altamirano v. Shaw Indus., Inc.*, C-13-0939 EMC, 2013 WL 2950600, at *4 (N.D. Cal. June 14, 2013) (citing *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008)); *see also Muniz*, 2007 WL 1302504, at *3.

26.　While Defendant denies the validity of Plaintiffs' claims and requests for relief, and does not concede in any way that the allegations in the Complaint are accurate, that Plaintiffs' claims are amenable to classwide treatment, or that Plaintiffs or the purported class are entitled to any of the requested relief, the allegations in the Complaint show it is more likely than not that the amount in controversy exceeds the jurisdictional minimum. *See Guglielmino*, 506 F.3d at 700.

27.　As described further below, as well as in the concurrently filed declaration from Jennifer Diercksmeier,[3] the amount in controversy exceeds the jurisdictional

---

[3] For purposes of effecting removal pursuant to 28 U.S.C. § 1332(d), declarations from defendants and their counsel constitute sufficient evidence to establish the amount in

minimum of $5,000,000.

### 1. Defendant's Estimate of the Amount in Controversy

28. In determining the amount in controversy to support its Notice of Removal, Defendant relies here on a conservative estimate of the amount in controversy based only on damages sought by Plaintiffs as a result of the alleged: (1) unpaid overtime wages for work performed in excess of 40 hours in one workweek or in excess of 8 hours in one day; (2) failure to provide accurate itemized wage statements; (3) failure to timely pay all wages owed upon termination; and (4) failure to provide required meal periods and past rest periods. Because the amounts in controversy for these claims alone satisfy the jurisdictional minimum requirement of $5 million, Defendant does not include additional analyses for estimates of the amounts placed in controversy by Plaintiffs' other allegations in the Complaint, including potential damages sought for the allegations of: (1) failure to pay minimum wages; (2) unlawful business practices; and (3) failure to reimburse employees for required expenses, as well as attorneys' fees associated with Plaintiffs' allegations. If necessary, Defendant could and would supplement this Notice of Removal to include estimates of the additional amounts in controversy based on the other allegations contained in the Complaint.

---

controversy. *See, e.g.*, *Muniz*, 2007 WL 1302504, at *2, *5 (relying on the evidence submitted by the defendant in the form of a declaration from its employee relations manager, which "set forth the underlying facts needed to calculate the amount in controversy," and a declaration from its counsel, which calculated the amount in controversy based on the underlying facts and in light of the laws governing the plaintiff's claims, and finding that the defendant had shown that "it is more likely than not that the jurisdictional threshold of $5,000,000.00 is met"); *Jasso v. Money Mart Express, Inc.*, No. 11-CV-5500 YGR, 2012 WL 699465, at *4 (N. D. Cal. Mar. 1, 2012) (finding there was "adequate foundation" for the declaration submitted by the defendant's human resources director regarding "the numbers of employees, payperiods [sic] and average rates of pay during the applicable limitations periods," which was derived from a compilation of "information that is kept in the normal course of business," and relying on the declaration to find that the defendant had met its burden to establish the amount in controversy in excess of CAFA's jurisdictional threshold).

**(a) The Amount Placed in Controversy by the Overtime Claim Alone is Nearly $5,000,000**

29. In their Second Cause of Action, Plaintiffs allege that Defendant failed "to properly compensate the members of the CALIFORNIA LABOR SUB-CLASS for overtime worked, including, work performed in excess of eight (8) hours in a workday and/or forty (4) hours in any workweek." Ex. A, ¶59. Plaintiffs claim that Defendant "maintained a wage practice of paying PLAINTIFFS and the other members of the CALIFORNIA LABOR SUB-CLASS without regard to the correct amount of overtime and correct applicable overtime rate for the amount of overtime they worked …. [Defendant's] policy and practice was to unlawfully and intentionally deny timely payment of wages due for the overtime worked…." *Id.* at ¶64. Thus, Plaintiffs allege that Defendant failed to compensate Plaintiffs and the putative class members for time worked on a daily basis.

30. Labor Code Section 1194(a) provides:

> Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit.

31. Based on Defendant's records, the number of current and former employees who held the non-exempt positions in California from four years prior to the filing of the Complaint to January 31, 2020 is 2,879. Diercksmeier Decl., ¶ 13. The <u>minimum</u> hourly rate of the putative class members was at least $12.50 per hour.[4] Diercksmeier Decl., ¶ 14.

32. Defendant's calculation of Plaintiffs' claims for unpaid time-and-a-half overtime wages is **$4,658,081.25** ($18.75 x 1 x 248,431). The computation of the

---

[4] From January 31, 2016 to January 31, 2020, the <u>minimum</u> hourly rate of pay for putative class members was at least $12.50 per hour. Diercksmeier Decl., ¶ 14. During that same period, the average base pay rate for full-time non-exempt California employees was $25.36 per hour. *Id.* For purposes of these calculations, Defendant has conservatively used the lowest hourly rate of $12.50.

amount in controversy is based on data reflecting: (a) that non-exempt full-time California employees worked 248,431 weeks from January 31, 2016 to January 31, 2020; (b) that each putative class member earned a regular rate of at least $12.50 per hour; and (c) that each putative class member incurred one hour of unpaid overtime for every week of work.[5] Diercksmeier Decl., ¶¶ 13-14.

33. An estimate of one hour of unpaid overtime for every week of work has been accepted by the federal courts as a reasonable and conservative figure. *See Jasso v. Money Mart Express, Inc.*, No. 11-CV-5500 YGR, 2012 WL 699465, at *5-6 (N. D. Cal. Mar. 1, 2012) (holding that calculating at least one violation per week was a "sensible reading of the alleged amount in controversy"); *Ray v. Wells Fargo Bank, N.A.*, No. CV 11-01477 AHM (JCx), 2011 WL 1790123, at *6-7 (C.D. Cal. May 9, 2011). This is especially the case where, as here, Plaintiffs fail to provide specific allegations concerning the frequency of which he worked overtime without being provided the requisite compensation. *See Byrd v. Masonite Corp.*, No. EDCV 16-35 JGB (KKX), 2016 WL 2593912, at *5 (C.D. Cal. May 5, 2016).

34. Consequently, a very conservative calculation of the amount placed in controversy by the Overtime Claim alone is nearly $5,000,000.[6]

**(b) The Amount Placed in Controversy by the Wage Statement Claim Alone Easily Exceeds $5,000,000**

35. In their Sixth Cause of Action, Plaintiffs allege that:

---

[5] In light of the Complaint's allegations that Defendant's purported failure to pay overtime wages was extensive, "it is reasonable to assume a 100% violation rate in calculating the amount in controversy for this cause of action." *Altamirano v. Shaw Industries, Inc.*, No. C-13-0939 EMC, 2013 WL 2950600, *11 (N.D. Cal. June 14, 2013).

[6] In reality, the amount placed in controversy by the Overtime Claim is higher than $5,000,000 for two key reasons: (a) Defendant's methodology completely excludes all part-time and temporary employees from the calculation, while at least some of those workers undoubtedly worked overtime during the Class Period; and (b) the average base pay rate of the full-time employees was more than two times the minimum pay rate of $12.50 that Defendant's used. Accordingly, $4,658,081.25 is a very conservative calculation of the true amount Plaintiffs have placed in controversy through their Overtime Claim.

10    Case No. 2:20-cv-2503
DEFENDANT'S NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT
42186026_2.docx

> From time to time, DEFENDANT also fails to provide PLAINTIFFS and the other members of the CALIFORNIA SUB-CLASS with complete and accurate wage statements which failed to show, among other things, the correct gross and net wages earned and correct amount of time worked.

Ex. A, ¶ 99.

36. Plaintiffs assert that as a result of Defendant's alleged intentional failure to provide wage statements in compliance with California law, they and the putative class members are "may elect to recover liquidated damages of fifty dollars ($50.00) for the initial pay period in which the violation occurred, and one hundred dollars ($100.00) for each violation in a subsequent pay period pursuant to Cal. Lab. Code § 226, in an amount according to proof at the time of trial (but in no event more than four thousand dollars ($4,000.00) for PLAINTIFFS and each respective member of the CALIFORNIA LABOR SUB-CLASS herein) ." Ex. A, ¶ 100.

37. The statute of limitations for a claim for wage statement penalties under Labor Code Section 226(e) is one year. Cal. Civ. Proc. Code § 340(a).

38. Defendant's calculation of Plaintiffs' claim for non-compliant wage statements is **$10,421,350**. The computation of the amount in controversy is based on: data reflecting that that Defendant issued in excess of 105,545 wage statements to non-exempt California employees between January 31, 2019 and January 31, 2020,[7] an assumed violation rate of one violation for each putative class member per pay period for which the employee was issued a paycheck during that statute of limitations period, application of Plaintiffs' allegation that the penalty for the first wage statement violation for each putative class member is $50, that the penalty for subsequent wage statement violations for each class member is $100, and that the aggregate penalty for each putative class member does not exceed $4,000. Diercksmeier Decl., ¶¶ 15-17.

---

[7] Non-exempt employees are paid on a weekly basis. Diercksmeier Decl. ¶ 15. Between January 31, 2019 and January 31, 2020, only 25 non-exempt California employees received only 1 wage statement, while 2,638 such employees received more than 1 wage statement. *Id*.

39. An estimate of one wage statement violation for every pay period is reasonable, based on the allegations in Plaintiff Complaint. *See* Ex. A, ¶¶17, 99-100. Thus, Plaintiffs have alleged that Defendant did not properly compensate them and the putative class members for each day they worked during the relevant period. Plaintiff's vague and ambiguous use of the phrase "from time to time" in its Sixth Cause of Action does not change this conclusion.

40. In *Altamirano v. Shaw Industies, Inc.*, No. C-13-0939 EMC, 2013 WL 2950600, *11 (N.D. Cal. June 14, 2013), the district court held that it was "reasonable to assume that each putative class member suffered at least one violation during any given pay period, resulting in an inaccurate wage statement," in light of the plaintiff's allegations "about the pervasiveness of the policies that are the subject of the first three causes of actions" for failure to pay minimum wages, failure to pay overtime wages, and failure to provide meal periods. 2013 WL 2950600, at *11. Here, given Plaintiffs' allegations that the putative class members were not properly compensated on a *daily* basis, Plaintiffs' claim that each putative class members suffered at least one violation during any given pay period. Thus, "it is reasonable to assume a 100% violation rate in calculating the amount in controversy for this cause of action." *Altamirano*, 2013 WL 2950600, at *11.

41. Consequently, the amount placed in controversy by the Wage Statement Claim alone easily exceeds $5,000,000.

### (c) Very Conservatively, the Amount Placed in Controversy by Plaintiffs' Waiting Time Penalties Claim is Nearly $1,000,000.

42. In their Eighth Cause of Action, Plaintiffs alleges that the "employment of Plaintiff Zamora and many CALIFORNIA LABOR SUB-CLASS Members has been terminated and DEFENDANT has not tendered payment of wages, to these employees who missed meal and rest breaks, as required by law." Ex. A, ¶ 110. Therefore, such individuals demand pursuant to California Labor Code § 203, "up to thirty days of pay as penalty for not paying all wages due at time of termination for all

employees who terminated employment during the CALIFORNIA LABOR SUB-CLASS PERIOD, and demands an accounting and payment of all wages due, plus interest and statutory costs as allowed by law." *Id.* at ¶ 111.

43. Section 203 penalties "accrue not only on the days that the employee might have worked, but also on nonworkdays," for up to 30 days, and the accrual of these penalties "has nothing to do with the number of days an employee works during the month." *Mamika v. Barca*, 68 Cal. App. 4th 487, 492-93 (1998). As the "targeted wrong" addressed by Section 203 is "the delay in payment" of wages, that wrong "continues so long as payment is not made"; therefore, "[a] proper reading of section 203 mandates a penalty equivalent to the employee's daily wages for each day he or she remained unpaid up to a total of 30 days." *Id*. at 493.

44. Here, Plaintiffs' Section 203 claim is not premised only on the theory that Defendant failed to timely deliver final paychecks to terminated employees; rather, Plaintiffs contend that Defendant owes penalties at least in part as a result its purported failure to pay all wages owed during their employment, including, but not limited to, unpaid minimum and overtime wages, meal period premiums, and rest break premiums within permissible time periods. Ex. A, ¶¶ 10-19. In light of the fact that, through their Complaint, Plaintiffs are also seeking to recover alleged unpaid minimum wage and overtime wages allegedly owed, it is clear that Plaintiffs' theory is that such alleged unpaid wages still have not been paid to Plaintiffs and putative class members. It is therefore reasonable to calculate the amount in controversy for this claim based on a 30-day penalty calculated at each former employee's daily wage rate. *See Quintana v. Claire's Stores, Inc*., No. 13-0368-PSG, 2013 WL 1736671, at *6 (N.D. Cal. Apr. 22, 2013) (finding that the defendants' waiting time penalties calculation was "supported by Plaintiffs' allegations" and was "a reasonable estimate of the potential value of the claims" where the complaint alleged that the defendants "'regularly required'" putative class members to work off-the-clock without compensation, and the defendants estimated that each putative class member

"potentially suffered at least one violation that continues to be unpaid"); *Stevenson v. Dollar Tree Stores, Inc.*, No. CIV S-11-1433 KJM, 2011 WL 4928753, at *4 (E.D. Cal. Oct. 17, 2011) (finding it reasonable for the defendant to assume, in light of the allegations in the complaint that members of the putative class "'routinely'" missed meal periods, that "all members of the proposed class . . . would have missed a meal period as described in the complaint at least once and were thus entitled to the waiting time penalty").

45.  Defendant's very conservative calculation of Plaintiffs' claim for waiting time penalties for failure to timely pay all wages upon termination is **$882,000** (30 x $12.50 x 2 x 1,176). The computation of the amount in controversy is based on data reflecting that: from February 14, 2017, to February 25, 2020,[8] more than 1,176 non-exempt California employees were separated from employment with Defendant, Plaintiffs' contention that each of these 1,176 putative class members is qualified to receive waiting time penalties,[9] data reflecting that each putative class member earned a regular rate of at least $12.50 per hour, and an extremely conservative estimate that a "day" for the purpose of the waiting time penalty constitutes only two work hours. Diercksmeier Decl., ¶¶ 14, 18.

46.  Consequently, the amount placed in controversy by the Waiting Time Penalties Claim alone is nearly $1,000,000.

### (d) The Amount Placed in Controversy by Plaintiffs' Claims for Failure to Provide Meal Breaks and Rest Periods Alone is Over $3,000,000.

47.  In their Fourth and Fifth Cause of Action, Plaintiff claims they were not provided required meal and rest breaks. Specifically, Plaintiffs allege Defendant failed

---

[8] The statute of limitations for waiting time penalty claims pursuant to Section 203 is three years. Cal. Code Civ. P. 338(a); *Pindeda v. Bank of Am.*, 50 Cal. 4th 1389 (2010).

[9] In light of the Complaint's allegation that Defendant's purported failure to timely pay all wages due upon termination was extensive, "it is reasonable to assume a 100% violation rate in calculating the amount in controversy for this cause of action." *Altamirano*, 2013 WL 2950600, at *11.

to provide them with "legally required meal breaks prior to their fifth (5th) hour of work. Ex. A, ¶ 90. Plaintiffs also allege that they were required to "work in excess of four (4) hours without being provided ten (10) minute rest periods." *Id.* at ¶ 94. "Further, these employees are denied their first rest periods of at least ten (10) minutes for some shifts worked of at least two (2) to four (4) hours, a first and second rest period of at least ten (10) minutes for some shifts worked of between six (6) and eight (8) hours, and a first, second and third rest period of at least ten (10) minutes for some shifts worked of ten (10) hours or more from time to time." *Id.* Thus, Plaintiffs and the California Class Members "were not provided with one hour wages in lieu therof." *Id.*

48.  The statute of limitations for a cause of action for failure to provide legally required meal periods and rest breaks is three years. Cal. Lab. Code §§ 203 and 338. This statute of limitations is extended to four years, however, where the cause of action is brought as part of a claim for Unfair Business Practices under California Business and Professions Code section 17200.

49.  Assuming the allegations in the Complaint to be true for the purposes of this Notice of Removal, Defendant owes each putative class member an additional hour of pay for each workday between January 31, 2017 to January 31, 2020 that such an individual worked and for which the individual was not provided either a meal or rest period or premium compensation in lieu thereof.

50.  The Complaint does not allege the number of meal periods or rest periods that were not provided to Plaintiff or the putative California Class members.  But the Complaint does allege that "[c]ommon questions of law and fact exist as to the members of the CALIFORNIA CLASS, with respect to the practices and violations of California law as listed above [including in paragraph 28], and predominate over any question affecting only individual CALIFORNIA CLASS Members…." (Ex. A., Compl. at ¶ 30(c).)

51.  The Complaint further alleges that "[a]s a result of their rigorous work schedules, PLAINTIFFS and other CALIFORNIA CLASS Members are also from

1 time to time unable to take off duty meal breaks and were not fully relieved of duty
2 for meal periods . . . PLAINTIFFS and the other CALIFORNIA CLASS Members
3 therefore forfeited meal breaks without additional compensation and in accordance
4 with [Defendants'] strict corporate policy and practice." (Ex. A., Compl. at ¶ 13).

5     52. The Complaint also alleges that "PLAINTIFF and other CALIFORNIA
6 CLASS Members are from time to time also required to work in excess of four (4)
7 hours without being provided ten (10) minute rest periods . . . . PLAINTIFFS and other
8 CALIFORNIA CLASS Members were also not provided with one hour wages in lieu
9 thereof. As a result of their rigorous work schedules, PLAINTIFFS and other
10 CALIFORNIA CLASS Members are periodically denied their proper rest periods by
11 DEFENDANTS . . . ." Ex. A, ¶ 14.

12     53. For purposes of calculating the amount in controversy on Plaintiff's meal
13 and rest break claims, the Court can apply a violation rate of at least one meal violation
14 per week and one rest break violation per week worked in the four-year period. *Accord*
15 *Quintana v. Claire's Stores, Inc.*, 2013 WL 1736671 at *6 (N.D. Cal.) (reasonable to
16 assume that each putative class member is entitled to premium pay for one missed
17 meal period and one missed rest period **per week worked**); *Jasso v. Money Market*
18 *Express, Inc.*, 2012 WL 699465 (N.D. Cal.) (same).

19     54. As a conservative basis for its calculations, Defendant is applying a
20 violation rate of only one meal and one rest break violation *every other week*.
21 Applying this violation rate to only full-time employees,[10] the putative California
22 Class members would be entitled to recover at least the amount of **$3,105,387.50**
23 **(**$12.50 x 0.5 x 248,431) + ($12.50 x 0.5 x 248,431). The computation of this amount
24 is based on the lowest minimum hourly wage for a non-exempt California employee
25 during the Alleged Class Period ($12.50), multiplied by 0.5 hours of pay, multiplied
26 by the total number of weeks in which full-time non-exempt employees performed

---

[10] Continuing to calculate the amount in controversy as conservatively as possible, Defendant has excluded all part-time and temporary employees from this calculation.

work between January 31, 2016 and January 31, 2020 (248,431). Diercksmeier Decl., ¶¶ 13-14.

57. For the reasons set forth above, the Fourth and Fifth Cause of Action places, at a minimum, **$3,105,387.50** in controversy.

### (e) Summary of Defendant's Calculations

56. As described above, a reasonable and conservative estimate of the amount in controversy presented by Plaintiffs' overtime, wage statement, waiting time penalty, and meal and rest period claims substantially exceeds $5,000,000. Indeed, these four claims alone have placed at least $19,066,818.75 in controversy, as follows:

| Claim | Estimated Exposure |
|---|---|
| Overtime Claim | $4,658,081.25 |
| Wage Statement Claim | $10,421,350 |
| Waiting Time Penalties Claim | $882,000 |
| Meal and Rest Period Claims | $3,105,387.50 |
| **TOTAL** | **$19,066,818.75** |

Consequently, the amount placed in controversy by Plaintiffs' claims exceeds the $5,000,000 jurisdictional threshold of 28 U.S.C. § 1332(d).

## III. DEFENDANT HAS SATISFIED THE REMAINING REMOVAL REQUIREMENTS

57. <u>Venue is Proper</u>. The Superior Court of California, County of Los Angeles, is located within the Central District of California. Therefore, venue for the purposes of removal is proper pursuant to 28 U.S.C. § 84(a) because the Central District of California is the "district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

58. As further required by 28 U.S.C. § 1446(a), Defendant hereby provides this Court with copies of all process, pleadings, and orders served on Defendant in this

action. True and correct copies of these documents are attached as **Exhibit A** to this Notice of Removal. Defendant has not been served with any pleadings, process, or orders besides those attached. Moses Decl., ¶ 3.

59. In accordance with 28 U.S.C. § 1446(d), Defendant will promptly give written notice to Plaintiffs of the filing of this Notice of Removal, and will file a copy of the Notice with the clerk of the Superior Court of the State of California, County of Los Angeles. Further, in accordance with Federal Rule of Civil Procedure 7.1 and Central District of California Local Rule 7-1.1, Defendant concurrently files its Certification of Interested Entities or Persons and Disclosure Statement. Finally, in the event this Court has any question regarding the propriety of this Notice of Removal, Defendant requests that the Court issue an Order to Show Cause so that Defendant may have an opportunity to more fully brief the basis for this removal.

DATED: March 16, 2020

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.


By: /s/ Evan R. Moses
　　Evan R. Moses

Attorneys for Defendant
PENSKE TRUCK LEASING CO., L.P.

42186026.2