EVAN R. MOSES, CA Bar No. 198099
evan.moses@ogletree.com
NOEL M. HICKS, CA Bar No. 310521
noel.hicks@ogletree.com
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
400 South Hope Street, Suite 1200
Los Angeles, CA 90071
Telephone:  213-239-9800
Facsimile:  213-239-9045

Attorneys for Defendant
PENSKE TRUCK LEASING CO., LP

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANGEL ZAMORA, GABRIEL LOAIZA and JORGE GUILLEN, individuals, on behalf of themselves and on behalf of all persons similarly situated,<br><br>           Plaintiffs,<br><br>     v.<br><br>PENSKE TRUCK LEASING CO., L.P., a Limited Partnership; and DOES 1 through 50, inclusive,<br><br>           Defendants. | Case No. 2:20-cv-02503 ODW (MRWx)<br><br>**DEFENDANT'S OPPOSITION TO PLAINTIFFS ANGEL ZAMORA, GABRIEL LOAIZA AND JORGE GUILLEN'S MOTION TO REMAND CASE TO STATE COURT**<br><br>[*Filed concurrently with Declarations of Evan Moses, Charles Weber, Dr. Joseph Krock, Request for Judicial Notice In Support of Opposition, and Proposed Order*]<br><br>Date:           May 18, 2020<br>Time:           1:30 p.m.<br>Place:          Courtroom 5D<br><br>Complaint Filed: January 31, 2020<br>Trial Date:       None<br>District Judge:   Hon. Otis D. Wright, II<br>                  Courtroom 5D, First St.<br>Magistrate Judge: Hon. Michael R. Wilner<br>                  Courtroom 550, Roybal |

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ..................................................................................1

II.   LEGAL STANDARD .............................................................................2

III.  DISCUSSION ........................................................................................4

    A.    Defendant Has Provided Overwhelming Evidence. Plaintiffs
        Have Provided No Evidence Whatsoever ...........................................4

    B.    The AIC Regarding Plaintiffs' Meal and Rest Break Claims Is
        Over $5 Million .................................................................................6

    C.    The AIC Regarding Plaintiffs' Overtime Claim Is Over $1.36
        Million ............................................................................................ 11

    D.    The AIC Regarding Plaintiffs' Claim for Waiting Time Penalties
        Is Over $5.3 Million ....................................................................... 12

    E.    The AIC For Plaintiffs' Wage Statement Claim Is Over
        $6 Million ...................................................................................... 15

    F.    Plaintiffs' Claim for Attorney Fees Implicates Nearly $5 Million ....... 17

    G.    There Is Over $21 Million In Controversy ......................................... 18

IV.   DEFENDANT'S FILING OF A MOTION TO DISMISS DOES NOT
      CONSTITUTE A LEGAL ADMISSION THAT REMAND IS
      APPROPRIATE ................................................................................. 18

V.    PLAINTIFFS MISSTATE THE FACTUAL RECORD ............................. 22

VI.   CONCLUSION ................................................................................... 24

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Altamirano v. Shaw Indus., Inc.*,
  2013 WL 2950600 (N.D. Cal. June 14, 2013) ........................................... 8, 15, 17

*Alvarez v. Limited Express, LLC*,
  2007 WL 2317125 (S.D. Cal. Aug. 8, 2007) ..................................................... 8

*Arias v. Residence Inn by Marriott*,
  936 F.3d 920 (9th Cir. 2019) ..................................................................... 3, 4, 24

*Bryant v. NCR Corp.*,
  284 F. Supp. 3d 1147 (S.D. Cal. 2018) .......................................................... 8

*Busker v. Wabtec Corp.*,
  2016 WL 953209 (C.D. Cal. Mar. 14, 2016),
    aff'd, 750 F. App'x 522 (9th Cir. 2018) ................................................... 14, 24

*Byrd v. Masonite Corp.*,
  2016 WL 2593912 (C.D. Cal. May 5, 2016) ................................................. 12

*Chabner v. United of Omaha Life Ins. Co.*,
  225 F.3d 1042 (9th Cir. 2000) ...................................................................... 14

*Chavez v. Huhtamaki, Inc.*,
  2020 WL 206931 (C.D. Cal. Jan. 14, 2020) ............................................... 3, 4, 6

*Chavez v. JPMorgan Chase & Co.*,
  888 F.3d 413 (9th Cir. 2018) ....................................................................... 18

*Cohn v. Petsmart, Inc.*,
  281 F.3d 837 (9th Cir. 2002) ........................................................................ 5

*Coleman v. Estes Express Lines, Inc.*,
  730 F. Supp. 2d 1141 (C.D. Cal. 2010) ........................................................ 7

*Dart Cherokee Basin Operating Co., LLC v. Owens*,
  135 S. Ct. 547 (2014) ........................................................................ 1, 2, 5, 6, 17

*Drumm v. Morningstar, Inc.*,
  695 F. Supp. 2d 1014 (N.D. Cal. 2010) ....................................................... 15

*Elizarraz v. United Rentals, Inc.*,
  2019 WL 1553664 (C.D. Cal. Apr. 9, 2019) ..................... 4, 5, 7, 8, 9, 12, 17, 24

*Fritsch v. Swift Transportation Company of Arizona, LLC*,
  899 F. 3d 785 (9th Cir. 2018) ...................................................................... 18

*Garibay v. Archstone Communities LLC*,
  539 F. App'x 763 (9th Cir. 2013) ................................................................ 18

42451881_1.docx

*Great North R. Co. v. Alexander*,
   246 U.S. 276, 38 S.Ct. 237, 62 L.Ed. 713 (1918) .................................. 11

*Guglielmino v. McKee Foods Corp.*,
   506 F.3d 696 (9th Cir. 2007) .......................................................... 3, 18

*Henry v. Cent. Freight Lines, Inc.*,
   692 F. App'x 806 (9th Cir. 2017) ......................................................... 2

*Ibarra v. Manheim Investments, Inc.*,
   775 F.3d 1193 (9th Cir. 2015) ......................................... 3, 4, 10, 17

*Jasso v. Money Mart Express, Inc.*,
   2012 WL 699465 (N. D. Cal. Mar. 1, 2012) .................................. 12, 18

*Long v. Destination Maternity Corp.*,
   2016 WL 1604968 (S.D. Cal. Apr. 21, 2016) ......................... 4, 9, 12, 17

*Marentes v. Key Energy Servs. Cal, Inc.*,
   2015 WL 756516 (E.D. Cal. 2015) .................................................... 14

*Marquez v. Toll Glob. Forwarding (USA) Inc.*,
   2018 WL 3046965 (C.D. Cal. June 19, 2018)........... 2, 5, 7, 8, 9, 10, 12, 14, 17, 24

*Muniz v. Pilot Travel Centers, LLC*,
   2007 WL 1302504 (E.D. Cal. May 1, 2007) ................................. 8, 9, 10

*Oda v. Gucci Am., Inc.*,
   2015 WL 93335 (C.D. Cal. Jan. 7, 2015) ........................................... 9

*Ogogo v. JayKay, Inc.*,
   2019 WL 2267193 (E.D. Cal. May 28, 2019) ..................................... 20

*Patton v. Experian Data Corp.*,
   2016 U.S. Dist. LEXIS 60590 (C.D. Cal. May 6, 2016)....................... 20, 22

*Patton v. Experian Data Corp.*,
   2018 WL 6190349 (C.D. Cal. Jan. 23, 2018)................................... 21, 22

*Polo v. Innoventions International, LLC*,
   833 F.3d 1193 (9th Cir. Aug. 18, 2016) ........................................... 21

*Quintana v. Claire's Stores, Inc.*,
   2013 WL 1736671 (N.D. Cal. 2013) ........................................... 14, 15

*Ramirez v. Carefusion Resources, LLC*,
   2019 WL 2897902 (S.D. Cal. July 5, 2019) ................................... 16, 17

*Ray v. Wells Fargo Bank, N.A.*,
   2011 WL 1790123 (C.D. Cal. May 9, 2011) ................................... 4, 12

*Rodriguez v. AT & T Mobility Servs. LLC*,
   728 F.3d 975 (9th Cir. 2013) ............................................................ 3

*Rwomwijhu v. SMX, LLC*,
   2017 WL 1243131 (C.D. Cal. 2017) ................................................ 18

42451881_1.docx

*Sanchez v. Russell Sigler, Inc.*,
   2015 WL 12765359 (C.D. Cal. 2015) ..................................................... 18

*Standard Fire Ins. Co. v. Knowles*,
   568 U.S. 588 (2013) ............................................................................ 3, 24

*Stevenson v. Dollar Tree Stores, Inc.*,
   2001 WL 4928753 (E.D. Cal. Oct. 17, 2011) ....................................... 15

*Suber v. Reliance Nat. Indem Co.*,
   110 F. Supp.2d 1227 (N.D. Cal. 2000) .................................................... 3

*United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. &
   Serv. Workers Int'l Union v. Shell Oil Co.*,
      602 F.3d 1087 (9th Cir. 2010) ............................................................ 21

*Unutoa v. Interstate Hotels & Resorts, Inc.*,
   2015 WL 898512 (C.D. Cal. Mar. 3, 2015) ..................................... 3, 4, 6

*Vikram v. First Student Mgmt., LLC*,
   2017 WL 4457575 (N.D. Cal. Oct. 6, 2017) ............................... 1, 16, 17

*Willingham v. Morgan*,
   395 U.S. 402 (1969) ................................................................................ 5

**Federal Statutes**

28 U.S.C. § 1332(d)(2) .................................................................................. 2

28 U.S.C. § 1441 ........................................................................................... 2

**State Statutes**

Cal. Lab. Code § 203 ............................................................................. 13, 14

Cal. Lab. Code § 226 ................................................................................... 15

Cal. Lab. Code § 226(a) ............................................................................... 15

Cal. Lab. Code § 226(e)(1) ........................................................................... 15

**Federal Rules**

Fed. R. Civ. Proc., Rule 12(b)(1) ................................................................ 20

Fed. R. Civ. Proc., Rule 12(b)(6) ................................................................ 18

Case No. 2:20-cv-02503 ODW (MRWx)

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO REMAND

42451881_1.docx

## I.   <u>INTRODUCTION</u>

Defendant Penske Truck Leasing Co., L.P. ("Defendant") removed this action from state court under the Class Action Fairness Act ("CAFA"). It did so because there are more than 100 putative class members, minimal diversity, and more than $5 million in controversy. Plaintiffs then filed a Motion to Remand (the "Motion"), arguing that: (1) there is insufficient evidence to support the amount-in-controversy ("AIC") requirement; (2) by filing a Motion to Dismiss after removing this case, Defendant "admits" that the case must be remanded; and (3) Defendant "reneged" on a binding stipulation that the AIC is below $5 million. All of these allegations are meritless.

<u>First</u>, Defendant has submitted compelling evidence to establish the AIC. Defendant provided adequate evidence in support of removal, and has now supplemented that evidence (as a defendant is entitled to do) in opposition to remand. Defendant's AIC calculations are based on: (1) reliable business records maintained in the ordinary course of Defendant's business; (2) a fact-witness declaration regarding the collection of those business records; (3) the analysis of those records by a Ph.D. in economics who specializes in applying advanced statistical techniques to wage and hour matters; and (4) well-settled case law regarding the acceptable violation rates that may be employed to AIC calculations in the context of a CAFA removal. Conversely, Plaintiffs have provided no evidence whatsoever. This is a fatal defect to Plaintiffs' Motion because, in a remand dispute over the AIC, both sides are obligated to submit proof for the court to determine, by a preponderance of the evidence, whether the AIC has been established. *Dart Cherokee Basin Operating Co., LLC v. Owens,* 135 S. Ct. 547, 554 (2014). Courts in the Ninth Circuit – *including this Court* – have repeatedly acknowledged that, absent compelling conflicting evidence from the plaintiffs, the courts must find that the preponderance of evidence weighs in favor of maintaining CAFA removal jurisdiction. (Defendant's Request for Judicial Notice in Support of

/ / /

Opposition to Motion to Remand ("RJN"), Ex. A, *Marquez v. Toll Glob. Forwarding (USA) Inc.*, 2018 WL 3046965, at \*3-4, 6 (C.D. Cal. June 19, 2018).

<u>Second</u>, Plaintiffs have provided no authority to support the absurd proposition that filing a motion to dismiss constitutes an "admission" that the case must be immediately remanded.

<u>Third</u>, Plaintiffs' contention that Defendant "reneged" on a stipulation to an AIC below $5 million is factually untrue and legally inapposite. Defendant has submitted documentary evidence proving that the purported stipulation between counsel is pure fabrication. Further, Defendant has provided legal authority holding that Plaintiffs' counsel would have been *forbidden* from entering into such a stipulation in any event.

In sum, Defendant has provided compelling evidence in support of CAFA jurisdiction, while Plaintiffs have provided no competing evidence whatsoever. Consequently, Plaintiffs' Motion to Remand must be denied.

## II.   **LEGAL STANDARD**

Defendant removed this case pursuant to 28 U.S.C. § 1441, asserting that this Court has original jurisdiction under CAFA, 28 U.S.C. § 1332(d)(2). For purposes of removal, "[t]he court accepts the allegations in the complaint as true and assumes the jury will return a verdict in the plaintiff's favor on every claim." *Henry v. Cent. Freight Lines, Inc.*, 692 F. App'x 806, 807 (9th Cir. 2017).

CAFA allows for federal jurisdiction over a purported class action when (1) there is an amount in controversy ("AIC") exceeding $5,000,000; (2) at least one putative class member is a citizen of a state different from defendant; and (3) the putative class exceeds 100 members. 28 U.S.C. § 1332(d)(2). "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart,* 135 S. Ct. at 554. If the alleged AIC is disputed by the plaintiff, "**both sides submit proof** and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Id.* (emphasis added).

In a wage hour dispute where the plaintiffs have not alleged a specific rate of Labor Code violations, it is entirely appropriate for a defendant to apply "reasonable assumptions" regarding the frequency of alleged violations. *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015). There is no prohibition against the use of assumed violation rates; the law only requires that violation rates are reasonable, grounded in some basis in fact or the allegations in plaintiffs' complaint, and are not "pulled out of thin air." *Id.* at 1198 ("Under this system, CAFA's requirements are to be tested by … using reasonable assumptions underlying the defendant's theory of damages exposure."); *Chavez v. Huhtamaki, Inc.*, No. 219CV05930ODWJEMX, 2020 WL 206931, at *2 (C.D. Cal. Jan. 14, 2020) ("[W]hen a defendant's allegations of removal jurisdiction are challenged, the defendant's showing on the amount in controversy may rely on reasonable assumptions.") (citing *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019)); *Unutoa v. Interstate Hotels & Resorts, Inc.*, No. 2:14-CV-09809-SVW-PJ, 2015 WL 898512, at *3 (C.D. Cal. Mar. 3, 2015) ("[A] removing defendant is not required to go so far as to prove Plaintiff's case for him by proving the actual rates of violation").

The fact that a plaintiff may affirmatively plead an AIC below $5 million does not constitute evidence for purposes of a remand analysis. *See, e.g., Standard Fire Ins. Co. v. Knowles,* 568 U.S. 588, 593 (2013) (holding representations in complaint of seeking less than $5 million are irrelevant because "a plaintiff who files a proposed class action cannot legally bind members of the proposed class before the class is certified")*; Suber v. Reliance Nat. Indem Co.*, 110 F. Supp.2d 1227, 1231 (N.D. Cal. 2000) ("the court cannot accept plaintiff's statement of damages as conclusive indication of subject matter jurisdiction").[1]

/ / /

---

[1] *See also Ibarra*, 775 F.3d at 1197; *Rodriguez v. AT & T Mobility Servs. LLC*, 728 F.3d 975, 981 (9th Cir. 2013); *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 701 (9th Cir. 2007).

3

Case No. 2:20-cv-02503 ODW (MRWx)

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO REMAND

III.   **DISCUSSION**

It appears that Plaintiffs do not dispute that the putative class involves more than 100 individuals and that the parties are minimally diverse as required by CAFA. (Mot., 5:12-13). The only disputed issues are whether the parties have demonstrated by a preponderance of the evidence if the AIC is above or below $5,000,000; if Defendant waived CAFA jurisdiction by filing a motion to dismiss after removing; and if Defendant entering into a binding stipulation to remand this action.

A.   **Defendant Has Provided Overwhelming Evidence. Plaintiffs Have Provided No Evidence Whatsoever**

In opposing remand, the Central District and this Court have held that a defendant need only prove the amount in controversy by a preponderance of the evidence, and may do so by a declaration or affidavit. RJN Ex. B, *Elizarraz v. United Rentals, Inc*., No. 218CV09533ODWJC, 2019 WL 1553664, at *3 (C.D. Cal. Apr. 9, 2019); *Ray v. Wells Fargo Bank, N.A*., No. CV 11-01477 AHM (JCx), 2011 WL 1790123, at *6 (C.D. Cal. May 9, 2011).[2]

Additionally, a defendant may rely on "reasonable assumptions" regarding assumed violation rates when a plaintiff's complaint does not provide clarity regarding the frequency of alleged violations. *Ibarra*, 775 F.3d at 1197. There is no prohibition against assumed violation rates – the law only requires that violation rates are reasonable and are not "pulled out of thin air." *Ibarra*, 775 F.3d at 1198; *Chavez*, 2020 WL 206931, at *2 (C.D. Cal. Jan. 14, 2020); *Arias* 936 F.3d at 922 (9th Cir. 2019); *Unutoa*, 2015 WL 898512, at *3 (C.D. Cal. Mar. 3, 2015) ("Removing defendants will inevitably rely on some assumptions to support removal[.]").

/ / /

---

[2] "At the current stage of litigation, Defendant need not "produce business records setting forth the precise number of employees in [the] putative class ... and the precise calculation of damages alleged to meet its burden regarding the amount in controversy." *Elizarraz* , 2019 WL 1553664, at *3 quoting *Long v. Destination Maternity Corp.*, No. 15CV2836-WQH-RBB, 2016 WL 1604968, at *6 (S.D. Cal. Apr. 21, 2016); *Unutoa*, 2015 WL 898512, at *3 (C.D. Cal. Mar. 3, 2015) ("[A] removing defendant is not required to go so far as to prove Plaintiff's case for him by proving the actual rates of violation.").

4

Here, Defendant has provided compelling and non-speculative evidence to support its AIC calculations. Specifically, Defendant relies on: (1) electronic data maintained in the ordinary course of Defendant's business (Declaration of Charles Weber ("Weber Decl.") ¶¶ 1-7); (2) a declaration establishing a foundation for those records (Weber Decl. ¶¶ 1-7; Declaration of Evan Moses ("Moses Decl."), ¶¶ 1-4); (3) a declaration from Dr. Joseph Krock, a managing director and economist at the Claro Group, LLC, who holds a Ph.D. in economics and specializes in applying advanced statistical techniques to wage and hour matters (Declaration of Dr. Joseph Krock ("Krock Decl."), ¶¶ 1-46); and (4) well-settled law (as detailed below) regarding the acceptable violation rates that may be employed when performing AIC calculations in the context of a CAFA removal.[3]

In contrast, Plaintiffs have provided no evidence at all. Their Motion does not contain a shred of evidence to refute Defendant's calculations or challenge the reasonableness of Defendant's applied violation rates. Plaintiffs merely complain that Defendant should have done "more" to evidence its AIC calculations. This is a fatal defect in Plaintiffs' Motion.

When a removing defendant has provided at least some admissible evidence in support of its calculations, a plaintiff seeking remand cannot simply complain that the defendant's evidence is insufficient. Plaintiffs must provide contrary evidence to demonstrate, by a preponderance, that the AIC has not been satisfied. *Dart,* 135 S. Ct. at 550 ("both sides submit proof" to establish, by a preponderance of evidence, whether remand is appropriate); *Marquez,* RJN Ex. A, at *4 ("If the alleged AIC is disputed by the plaintiff, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied."); *Elizarraz,* RJN Ex. B at *2 (same).

---

[3] It is entirely appropriate for Defendant to submit and rely on supplemental evidence not available when Defendant initially removed this case. For purposes of removal, courts treat later-filed evidence as amendments to the removal notice. *Cohn v. Petsmart, Inc.,* 281 F.3d 837, 840, n. 1 (9th Cir. 2002); *see also Willingham v. Morgan,* 395 U.S. 402, 407 n. 3 (1969); *Owens,* 135 S.Ct. at 554.

Ignoring their evidentiary burden, Plaintiffs mistakenly assume there is an anti-removal presumption and, therefore, remand is required if there is "any doubt" as to the right of removal. (Motion (hereinafter "Mot.") 7:8-12). This is incorrect as a matter of law. The Supreme Court – as well as this Court and others in this District – have rejected any anti-removal presumption, explicitly holding that "no anti-removal presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court." *Dart*, 135 S. Ct. at 547; *Chavez*, 2020 WL 206931, at *2; *Unutoa*, 2015 WL 898512, at *1.

**B.    The AIC Regarding Plaintiffs' Meal and Rest Break Claims Is Over $5 Million**

Defendant calculates the AIC for meal period claims at $2,718,313 (Krock Decl., ¶ 26) and the AIC for rest break claims at $2,751,122 (Krock Decl. ¶ 30).

To arrive at these totals, Dr. Krock analyzed Defendant's business records to identify the number of rest break-eligible workdays (1,132,556) and the number of meal break-eligible workdays (1,114,774) for each employee.[4] (Krock Decl., ¶¶ 23, 27). Next, Dr. Krock applied a violation rate of one meal penalty every tenth meal period-eligible workday, and one rest penalty every tenth rest break-eligible workday. (Krock Decl, ¶ 24, 28). In other words, Dr. Krock applied a 10% violation rate with respect to just those days that were actually penalty-eligible.[5] On this basis, Dr. Krock identified 112,654 instances of meal periods in dispute, and 114,398 instances of rest breaks in dispute. (Krock Decl., ¶ 26, 30).  Finally, Dr. Krock calculated exposure on an individual employee basis by applying, for each penalty instance, one hour of pay

/ / /

---

[4] For purposes of this Opposition only, Defendant defines a "rest break-eligible workday" as one in which a non-exempt employee worked over 3.5 hours, and a "meal period-eligible workday" as one in which a non-exempt employee worked over 5.0 hours. (Krock Decl., ¶ 23-24, 27-28). Together these constitute the "penalty-eligible" shifts for meal and rest period calculations.

[5] As described below, Ninth Circuit case law would have allowed Dr. Krock to apply his violation rate to *every day worked* rather than limiting his calculations to every meal period-eligible workday or rest break-eligible workday. However, Dr. Krock elected to use the most conservative option possible.

at the <u>lowest</u> hourly rate each individual employee worked during employment with Defendant. (Krock Decl., ¶ 25, 29).

There is no legitimate basis for Plaintiffs to challenge these AIC calculations. The data Defendant relies on is not subject to reasonable dispute and the violation rates applied are ***far below*** those which courts in the Ninth Circuit – *including this Court* – have found to be a compelling basis for denying remand. As this Court has recognized: "Numerous courts have found a 100% violation rate reasonable (i.e., missed meal period and missed rest period every day)" and it is a "conservative" basis to deny remand where the defendant "assumes a 50% violation rate of the meal violations and a 25% violation rate of the rest period violations." *Marquez*, RJN Ex. A, at *3. *See also Elizarraz*, RJN Ex. B, at *3 ("Numerous courts have found a 100% violation rate reasonable (*i.e.*, missed meal period and missed rest period every day), yet Defendant conservatively assumes a 50% violation rate for the meal violations and a 25% violation rate for the rest period violations.").

In this case, Defendant is taking an even more conservative approach than that which this Court endorsed in *Marquez* and *Elizarraz*. Rather than assuming a 50% meal and 25% rest violation rate with respect to every day worked by putative class members, Defendant here is applying a 10% violation rate only to days that (according to an expert analysis) were of sufficient duration to be meal- or rest-break eligible. (Krock Decl., ¶ 24, 28). Using even these extraordinarily conservative calculations, Defendant easily satisfies the AIC requirement.

Plaintiffs challenge these calculations on the grounds that *any* assumed violation rate is unacceptable. This is, of course, not the case. Not only would Plaintiffs' argument make it impossible for a defendant to remove a wage/hour class action without admitting liability, it also ignores the relevant case law.

- In *Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1149 (C.D. Cal. 2010), the court found a 100% meal violation rate acceptable where

/ / /

plaintiff alleged existence of a common policy or practice but "did not allege a more precise calculation" or frequency of violations.

- In *Altamirano v. Shaw Indus., Inc.*, No. C-13-0939 EMC, 2013 WL 2950600, *11 (N.D. Cal. June 14, 2013), the court accepted a 100% meal violation rate where plaintiff alleged that a "meal break policy resulted in non-exempt employees not receiving meal periods".

- In *Muniz v. Pilot Travel Centers, LLC*, No. CIV-07-0325 FCD EFB, 2007 WL 1302504, at *4 (E.D. Cal. May 1, 2007), the court accepted a 100% violation rate based on equivocal allegations that class members were "not always provided" lawful meal or rest breaks.

- In *Alvarez v. Limited Express, LLC*, No. 07CV1051 IEG (NLS), 2007 WL 2317125, at *3 (S.D. Cal. Aug. 8, 2007), the court accepted a 100% rate when plaintiff alleged rest period violations made it "virtually impossible" for defendant's employees to take meal periods and rest breaks.

- In *Marquez v. Toll Glob. Forwarding (USA) Inc.*, No. 2:18-CV-03054-ODW (ASx), 2018 WL 3046965, at *3 (C.D. Cal. June 19, 2018), this Court found a 50% violation rate reasonable where plaintiff alleged that class members were "often" denied compliant meal periods. RJN, Ex. A

- In *Elizarraz v. United Rentals, Inc.*, No. 218CV09533ODWJC, 2019 WL 1553664, at *4 (C.D. Cal. Apr. 9, 2019), this Court found a violation rate of 50% for the meal period claim and 25% for the rest period claim reasonable where plaintiff alleged a "pattern and practice" of meal and rest period violations. RJN, Ex. B.

- In *Bryant v. NCR Corp.*, 284 F. Supp. 3d 1147, 1151 (S.D. Cal. 2018), the Court found a 60% violation rate for the meal period claim and a 30% violation rate for the rest period claim proper where the complaint offered *no guidance at all* regarding the frequency of the alleged violations.

/ / /

- In *Oda v. Gucci Am., Inc.*, Nos. 2:14-CV-7468-SVW (JPRx), 2:14-CV-07469-SVW (JPRx), 2015 WL 93335, at *5 (C.D. Cal. Jan. 7, 2015), the court found that defendant's assumption of a 50% violation rate reasonable where plaintiff's complaint alleged that defendant maintained a policy or practice of not paying meal or rest premiums and class members sometimes did not receive proper meal or rest periods.

- In *Long v. Destination Maternity Corp.*, No. 15CV2836-WQH-RBB, 2016 WL 1604968, at *7-8 (S.D. Cal. 2016), the court held that a violation rate of one instance per week (i.e., 20%) was reasonable based on plaintiff's allegation that there was a "uniform policy" leading to occasional violations.

Here, Plaintiffs allege a "strict corporate policy and practice" of meal and rest violations, which identifies greater frequency and regularity than the "not always provided" and "often denied" language that justified application of violation rates between 50-100%. (ECF No. 1-1, ¶ 13; *Muniz*, 2007 WL 1302504, at *4 (allegation that class members were "not always provided" lawful meal or rest breaks; *Marquez*, RJN Ex. A, at *3 (allegation that class members were "often" denied compliant meal periods; *Elizarraz*, RJN Ex. B, at *4 ("a violation rate of 50% for the meal period claim and 25% for the rest period claim reasonable" based on equivocal allegation of "pattern and practice" in complaint).

On this basis, Defendant would be justified applying a 50% to 100% violation rate. However, out of a surfeit of caution, in this case ***Defendant applied a violation rate of less than 10%*** (*i.e.*, 10% not with respect to all work days, but just those days which were identified, through expert analysis, as meal- and rest-eligible). (Krock Decl, ¶ 24, 28). If Defendant has not satisfied its burden of proof under these circumstances, then no case is removable without actually admitting liability. *Elizarraz*, RJN Ex. B, at *3 ("There is no obligation by defendant to support removal with production of extensive business records to prove or disprove liability and/or
/ / /

damages ... at this premature (pre-certification) stage of the litigation.") quoting *Muniz*, 2007 WL 1302504, at *4–5.

While Defendant has provided compelling evidence in support of its AIC calculations and relies on well-established case law supporting the application of particular violation rates, Plaintiffs have provided no evidence whatsoever to refute Defendant's calculations. Instead, Plaintiffs merely simply rely on *Ibarra v. Manheim* for the unremarkable propositions that a defendant cannot establish removal jurisdiction by pure "speculation and conjecture" and that assumed violation rates "need some reasonable ground underlying them." (Mot. 7:16-18). But this is not a situation involving speculation and conjecture. Defendant has relied on hard data, validated by an economist, and violation rates authorized by well-established case law. For this reason, Plaintiffs' reliance on *Ibarra* is misplaced.

As this Court has recognized in the *Marquez* case, *Ibarra* does not foreclose (as Plaintiffs contend in their Motion) the application of an assumed violation rate. *Ibarra* merely acknowledges that an AIC is impermissibly speculative when "*neither side* has submitted proof regarding a violation rate." *Marquez,* RJN Ex. A, at *3 (emphasis in original) (citing *Ibarra*, 775 F.3d at 1195).

More to the point, as this Court further held in the *Marquez* case, even a 100% violation rate is reasonable in circumstances where: (1) "the rate of violations from the complaint is somewhat ambiguous"; (2) "[t]he Plaintiff as the 'master of his claim' could have alleged fact-specific allegations to narrow the possible violation rate or penalties sought, keeping them below the threshold, but chose not to"; and (3) "Plaintiff … alleges no other rate that would be more accurate, and submits no evidence discrediting the 100% rate." *Marquez*, RJN Ex. A, at *3. The existence of these factors motivated this Court to deny remand in the *Marquez* case, and the result should be no different here.

/ / /

/ / /

### C.   The AIC Regarding Plaintiffs' Overtime Claim Is Over $1.36 Million

Defendant calculates the AIC for overtime claims at $2,057,665. (Krock Decl., ¶ 35). To arrive at this number, Dr. Krock identified each work day in which each putative class members worked eight hours or more (an "overtime-eligible day"). (Krock Decl., ¶ 31). On this basis, Dr. Krock identified 571,222 overtime eligible days (*Id.*) Next, Dr. Krock applied a violation rate of one hour of unpaid overtime for every tenth overtime-eligible day per employee, and rounded up to the next whole number. (Krock Decl., ¶ 32). On this basis, Dr. Krock identified 58,295 instances of potential overtime hours in dispute. (Krock Decl., ¶ 35). Finally, with respect to each such violation, Dr. Krock calculated exposure by applying an overtime rate of 1.5 times each employees' lowest recorded rate of pay. (Krock Decl. ¶ 33-34).

There is no legitimate basis for Plaintiffs to challenge these AIC calculations. The data Defendant relies on is not subject to reasonable dispute and the violation rates Dr. Krock applied are well below those which courts in the Ninth Circuit – including courts from this District – have found to be a compelling basis for denying remand.

Here, Plaintiffs allege that Defendant has a "company-wide policy and procedure" of failing to pay correct overtime, and "has a policy and practice … to unlawfully and intentionally deny … overtime worked." (ECF No. 1-1 at ¶¶ 18, 64). Further, they allege Defendant's allegedly unlawful practices apply to every putative class member without exception. (*Id.* at ¶¶ 25, 29(c)). In short, although Plaintiffs intentionally avoid alleging any specific rate at which overtime was denied, Plaintiffs unequivocally allege that such violations occur with regularity based on a common unlawful policy or practice. *See Great North R. Co. v. Alexander*, 246 U.S. 276, 282, 38 S.Ct. 237, 239–240, 62 L.Ed. 713 (1918) ("[T]he plaintiff may by the allegations of his complaint determine the status with respect to removability of a case").

Based on similar allegations, courts in the Ninth Circuit have consistently held that allegations of a common unlawful overtime practice supports a conservative violation rate of one hour of unpaid overtime per putative class member per week.

*See Long*, 2016 WL 1604968, at *7; *Jasso v. Money Mart Express, Inc*., No. 11-CV-5500 *YGR*, 2012 WL 699465, at *5-6 (N. D. Cal. Mar. 1, 2012) (holding that calculating at least one violation per week was a "sensible reading of the alleged amount in controversy"); *Ray v. Wells Fargo Bank, N.A.*, No. CV 11-01477 AHM (JCx), 2011 WL 1790123, at *6-7 (C.D. Cal. May 9, 2011). Indeed, the application of a one-hour per week violation rate is particularly warranted in circumstances where, as here, Plaintiffs could have – but failed to – allege a more specific frequency of alleged violations. *See Byrd v. Masonite Corp*., No. EDCV 16-35 JGB (KKX), 2016 WL 2593912, at *5 (C.D. Cal. May 5, 2016).

In sum, Defendant's calculations rely on hard data, validated by an economist, and violation rates authorized by well-established case law. Ignoring all of this, Plaintiffs allege that Defendant has "concocted an arbitrary calculation" because it is premised on a violation rate that has not yet been proven as a matter of law. (Mot. 10:13-14). But that argument ignores the approach historically embraced by this Court. For example, in the *Marquez* action, this Court found that an allegation that class members were "often" denied overtime justified application of a violation rate between 50 and 100%. (RJN Ex. A, at *3). In *Elizarraz* this Court found a violation rate of 50% for the meal period claim and 25% for the rest period claim reasonable where plaintiff alleged a "pattern and practice" of meal and rest period violations. (RJN Ex. B, at *4).

Just as in *Marquez*, in this action Plaintiffs could have, but chose not to, pled a more specific violation rate for unpaid overtime or to subsequently produce evidence discrediting Defendant's applied violation rate. Therefore, just as this Court did in *Marquez*, Plaintiffs' Motion should be denied.

**D.** **The AIC Regarding Plaintiffs' Claim for Waiting Time Penalties Is Over $5.3 Million**

Plaintiffs' Complaint alleges that Defendant fails to timely pay final wages due to terminated employees. This is a "derivative" allegation, meaning that Plaintiffs

contend that final pay violations are "contingent on" substantive violations such as unpaid wages, unpaid overtime wages, meal period premiums, and rest break premiums. (Mot. 13:15-19). On this basis, Plaintiff seeks statutory penalties pursuant to Labor Code Section 203.

Recovery of penalties under Section 203 does not hinge upon the number of violations committed. Rather, if an employee is owed any money at the end of their employment, they are entitled to penalties equal to their hourly rate up to a statutory maximum of 30 days. Cal. Labor Code § 203.

Based on this statutory formula, Defendant calculates the AIC for waiting time claims at $3,946,248. (Krock Decl., ¶ 38).

To calculate the AIC for Section 203 penalties, Dr. Krock identified each employee terminated during the applicable three-year statute of limitations. (Krock Decl., ¶ 37). Specifically, from January 31, 2017 through April 7, 2020, there was a total of 777 relevant employees. (*Id.*). Dr. Krock did not assume that every employee worked eight hours per day or apply an aggregate average of all employees' rates of pay. (Krock Decl., ¶ 37). Instead, Dr. Krock calculated, on a per-person basis, 30-days of unpaid wages at each employee's actual final base rate of pay and based on each employee's average hours of work. (Krock Decl., ¶ 37).

Plaintiffs cannot refute the accuracy of the data relied upon by Dr. Krock or his analysis. Instead, Plaintiffs take issue with the assumption that all employees terminated during the relevant statutory period were underpaid at least some amount of wages at the time of their separation. (Mot. 13:13-15). But this ignores the plain language of Plaintiffs' Complaint. In no uncertain terms, it states that *every* member of the putative class was denied at least some amount of compensation:

> Plaintiffs, ***like all the other members of the California Class***, … was [sic] subjected to the Defendant's practice and policy which fails to pay the correct rate of overtime wages due to the California Class for all overtime worked by the California Class and thereby systematically underpays overtime compensation to the California Class.

(ECF No. 1-1 at ¶ 29(c) (emphasis added)).

In light of these allegations (which, for purposes of an AIC analysis the Court must accept as true), a 100% violation rate is required. *See, e.g.*, *Marquez*, RJN Ex. A, at *3 ("Although Defendants do not use this [100%] rate in their calculations for this claim, it follows from a reasonable inference."); *Busker v. Wabtec Corp.*, 215CV0819ODWAFM, 2016 WL 953209, at *5 (C.D. Cal. Mar. 14, 2016), aff'd, 750 F. App'x 522 (9th Cir. 2018) (ruling that calculating the amount in controversy based on "each terminated employee", as put forth by defendant, to be reasonable calculation); *Quintana v. Claire's Stores, Inc.*, 2013 WL 1736671, *4-6 (N.D. Cal. 2013) ("As to the waiting time claims, the court finds that Defendants' calculations" of thirty-days of waiting time penalties for each putative class member terminated during the statute of limitations "are supported by Plaintiffs' allegations and are a reasonable estimate of the potential value of the claims."). Plaintiffs' allegation that *every* employee was denied at least some amount of overtime necessarily means that the amount in controversy includes waiting time penalties with respect every former employee.

Moreover, even if Plaintiffs had not specifically alleged a 100% violation rate, Defendants could still (although they do not need to) apply an equivalent assumed violation rate. For example, in *Busker*, this Court applied a 100% violation rate for waiting time penalties, reasoning that "where a statutory maximum is specified, courts may consider the maximum statutory penalty available in determining whether the jurisdictional amount in controversy requirement is met." (2016 WL 953209, at *5) (citing *Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1046 (9th Cir. 2000)). Similarly, in *Marquez*, this Court accepted a 50 to 100% violation rate for Section 203 claims, holding that such assumed rates are reasonable where "Plaintiff fails to suggest a different number of employees who were denied wages, and provides no evidence to counter Defendant's assumptions." RJN Ex. A, at *3.[6]

---

[6] *See also* RJN Ex. B, at *3; *Marentes v. Key Energy Servs. Cal, Inc.*, No. L13–CV– 02067 AWI, 2015 WL 756516, at *9 (E.D. Cal. 2015) (where "wages are alleged to have not been paid, the full thirty days may be used for each of the putative class

**E.     The AIC For Plaintiffs' Wage Statement Claim Is Over $6 Million**

Plaintiffs' wage statement claim includes allegations of "derivative" violations (*i.e.*, the wage statements are inaccurate because Defendant failed to pay all wages due as well as all meal and rest break premiums due) as well as "facial defect" violations (*i.e.*, the wage statements fail to accurately provide the nine categories of information identified in Labor Code Section 226(a). (ECF 1-1, ¶ 99).

Recovery of penalties for violations of Section 226 does not hinge upon the number of defects contained in a particular wage statement. Irrespective of the number of defects, if a wage statement is actionable, an injured employee is entitled to recover $50 for the initial pay period in which a violation occurs and $100 for each violation in a subsequent pay period, not to exceed an aggregate penalty of $4,000. Cal. Labor Code § 226(e)(1).

Based on this statutory formula, Defendant calculates the actual AIC for wage statement claims at $6,016,350. (Krock Decl., ¶ 41).

To calculate the AIC for wage statement penalties, Dr. Krock calculated that there were 1,826 putative class members who were provided a wage statement during the applicable one-year statute of limitations, specifically January 31, 2109 through April 12, 2020. (Krock Decl., ¶ 40). Dr. Krock determined that a total of 84,095 wage statements were provided during this time. (*Id*.). Next, Dr. Krock calculated, on a per-person basis, the statutory penalties at the rate of $50 for each initial pay period, $100 for each subsequent pay period, capped at $4,000. (Krock Decl., ¶ 39-40). When factoring the $4,000 per putative class member cap, Dr. Krock identified 61,677

members."); *Altamirano v. Shaw Indus., Inc.*, No. C-13-0939 EMC, 2013 WL 2950600, at *12 (N.D. Cal. 2013) ("[A]s there is nothing in the complaint or the record to suggest that Defendants paid employees these unpaid wages at some point during the month after they separated from employment, awarding penalties for the entire 30 pay period is reasonable"); *Quintana v. Claire's Stores, Inc.*, 2013 WL 1736671, *4-6 (N.D. Cal. 2013); *Stevenson v. Dollar Tree Stores, Inc.*, No. CIV S-11-1433 KJM, 2001 WL 4928753, at *4 (E.D. Cal. Oct. 17, 2011) (reasonable to assume that if at least one meal period was denied per employee, each former employee could be entitle to waiting time penalties); *Drumm v. Morningstar, Inc.*, 695 F. Supp. 2d 1014, 1018–19 (N.D. Cal. 2010).

affected pay periods out of the potential total of 84,095. (Krock Decl., ¶ 40). This yielded an AIC of $6,016,350. (Krock Decl., ¶ 41).

Plaintiffs take issue with the application of a 100% violation rate. However, they fail to offer any evidence of a lower violation rate. Instead, they argue that a 100% violation rate must be rejected because their Complaint alleges that class members only receive inaccurate wage statements "from time to time." (Motion, 12:20-27.) Unfortunately for Plaintiffs, *this exact argument has been repeatedly rejected*. It is unclear why they believe that rehashing this argument will fare any better before this Court than it has before any others.

The Northern District case, *Vikram v. First Student Mgmt.*, *LLC*, No. 17-CV-04656-KAW, 2017 WL 4457575 (N.D. Cal. Oct. 6, 2017), presented the identical situation raised in this motion. In *Vikram*, plaintiffs (represented by the same counsel in this action) alleged that defendant provided inaccurate wage statements "from time to time" in the complaint. (RJN, Ex. C, ¶ 86.) On this basis, plaintiffs claimed that remand was necessary because it was speculative for defendant to base its AIC calculations on an assumption that all wage statements contained defects. (RJN, Ex. D, p.6.) The Northern District rejected plaintiff's argument on the grounds that plaintiff – despite his "from time-to-time" allegation – failed to provide evidence of a violation rate below 100%. (RJN Ex. E, at *4 ("Plaintiff provides no evidence in support of his allegation that the inaccurate wage statements were only issued "[f]rom time to time," or that there were ever any wage statements that contained only bonus payments.")).

Similarly, in *Ramirez v. Carefusion Resources, LLC*, No. 18-CV-2852-BEN-MSB, 2019 WL 2897902 (S.D. Cal. July 5, 2019), plaintiffs (represented by the same counsel in this action) alleged that defendant provided inaccurate wage statements "from time to time" in the complaint. (RJN, Ex. F, ¶ 82.) On this basis, plaintiffs argued in favor of remand that that a 100% wage statement violation rate is improper unless the complaint specifically incorporates such a violation rate. (RJN, Ex. G, p.7.

**16**

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO REMAND

The Southern District disagreed, finding that a 100% violation rate "is not unreasonable" when plaintiff "provides no evidence supporting her contention that there were ever any wage statements that included the requisite 'accurate itemization' of overtime, missed meal breaks, and rest breaks." RJN, Ex. H. Further, the court noted that allegations of facial defects in Defendant's wage statements "necessarily imply a 100% violation rate." *Id*. (citing *Vikram*.).

This case presents an identical situation to that adjudicated in *Vikram* and *Ramirez*, and there is no reason for a different result. Defendant has provided compelling evidence and, in response, Plaintiffs seek to hide behind artful pleading (*i.e.,* the "from time-to-time" allegation). But artful pleading is not evidence.

Because Plaintiffs failed to produce any evidence to shift the preponderance of evidence in their favor, Defendant's AIC must be accepted. *Marquez*, RJN Ex. A, at *6 ("As Plaintiff has submitted no evidence of any other rate, this Court has only Defendants' calculations to consider."); *Dart*, 135 S.Ct. at 550 (holding that when AIC is challenged "both sides submit proof and the court decides . . .whether the amount-in-controversy requirement has been satisfied."); *Ibarra*, 775 F.3d at 1199-1200 (declining to accept plaintiffs' contention that "plaintiffs' motion to remand need not include evidence and is allowed to 'be based on the fact that Defendant's evidence is insufficient to meet the burden of proof").[7]

## F.    Plaintiffs' Claim for Attorney Fees Implicates Nearly $5 Million

Plaintiffs' complaint states that they are seeking a recovery of attorneys' fees. (ECF No 1-1, Prayer for Relief). This Court and others have held that under CAFA, attorney's fees are properly included in the calculation of the AIC. *Elizarraz*, 2019

---

[7] Even if the Court were to reject a 100% violation rate, a 50% violation rate would still yield an AIC of over $3 million. This is an entirely reasonable violation rate given the underlying nature of Plaintiffs' claims for unpaid overtime, unpaid minimum wages, improper meal periods, and improper rest breaks. *See Altamirano*, 2013 WL 2950600 at *11 (holding that it was "reasonable to assume each putative class member suffered at least one violation during any given pay period, resulting in an inaccurate wage statement" each pay period); *Long*, 2016 WL 1604968, at *8 ("Because Plaintiff does not include fact-specific allegations regarding the circumstances of the alleged missed meal and rest periods" it was reasonable to assume at least one violation each week).

WL 1553664, at *2; *Jasso*, 2012 WL 699465 at *6 (citing *Guglielmino*, 506 F.3d at 700 (9th Cir. 2007)).

In the Ninth Circuit, 25% of the Plaintiffs' total recovery is the "benchmark level" for reasonable attorneys' fees in class action cases. *Garibay v. Archstone Communities LLC*, 539 F. App'x 763, 764 (9th Cir. 2013). Using this 25% benchmark, courts in this District have included attorney fees for 25% of the total recovery in determining the amount in controversy under CAFA. *Id.; Rwomwijhu v. SMX, LLC*, No. CV1608105ABPJWX, 2017 WL 1243131, at *6 (C.D. Cal. 2017); *Sanchez v. Russell Sigler, Inc.*, No. CV1501350ABPLAX, 2015 WL 12765359, at *7 (C.D. Cal. 2015).[8] Applying this same methodology here, there is an additional **$4,372,424.50** in controversy arising from Plaintiffs' attorney fee claim ($17,489,698 x 0.25 = $4,372,424.50).

### G.   There Is Over $21 Million In Controversy

In sum, Penske has shown there is at least $21,862,122.50 in controversy ($2,718,313 [meal period penalties] + $2,751,122 [rest break penalties] + $2,057,665 [unpaid overtime] + $3,946,248 [waiting time penalties] + $6,016,350 [wage statement penalties] + $4,372,424.50 [attorney fees]) based on the allegations in Plaintiffs' complaint. And these calculations do not even include the value of Plaintiffs' claims for (1) failure to pay minimum wages; (2) unlawful business practices; and (3) failure to reimburse employees for required expenses.

## IV.   DEFENDANT'S FILING OF A MOTION TO DISMISS DOES NOT CONSTITUTE A LEGAL ADMISSION THAT REMAND IS APPROPRIATE

Plaintiffs advance the flawed argument that Defendant's post-removal filing of a Motion to Dismiss pursuant to FRCP 12(b)(6) constitutes a judicial "admission" that

/ / /

---

[8] *See also Fritsch v. Swift Transportation Company of Arizona, LLC*, 899 F. 3d 785 (9th Cir. 2018); *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 700 (9th Cir. 2007); *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 414-15 (9th Cir. 2018).

this case should be remanded, and that Defendant "concedes that this matter should be remanded back to state court." (Mot. 14:21-22). This is absurd.

First, Plaintiffs do not speak for Defendant. Defendant has never, through words or actions, "admitted" or "conceded" that this case should be remanded. To the contrary, faced with a 30-day statutory deadline to remove this action from state court, Defendant acted promptly and decisively to assert CAFA removal jurisdiction. (ECF No. 1). Plaintiffs have not provided a shred of evidence to suggest that Defendant ever acted inconsistent with an intention to keep this case in federal court. (ECF No. 12, 12-1, 12-3). Nor have Plaintiffs identified any legal authority to support the ridiculous proposition that filing a responsive pleading after removal (here, a Motion to Dismiss) legally "concedes that this matter should be remanded." (Mot. 14:21-22). No such authority exists. Plaintiffs have fabricated the factual and legal basis for their argument about what constitutes a binding "admission" and such argument must be disregarded.

Indeed, to accept the reasoning behind Plaintiffs' argument would equally require this Court *to immediately dismiss Plaintiffs' entire case with prejudice*. After all, Plaintiffs are arguing that this case must be remanded because Defendant's Motion to Dismiss divested the Court of jurisdiction. (Mot. 5:22-25). But the Court can only be divested of jurisdiction after Defendant's Motion is actually granted. Therefore, by their own reasoning, Plaintiffs' insistence that this Court lacks subject matter jurisdiction constitutes a binding "admission" that Defendant's pending Motion to Dismiss is meritorious and will inevitably be granted. If this is the train of logic Plaintiffs genuinely want to pursue, Defendant happily accepts Plaintiffs' "concession" that their case must be dismissed with prejudice.

Of course, the logical absurdity of Plaintiffs' reasoning highlights the fundamental problem with their argument, as well as the reason why Plaintiffs try so hard to characterize it as an "admission" by Defendant rather than a legal argument contingent on the outcome of Defendant's Motion to Dismiss. Plaintiffs' argument regarding subject matter jurisdiction is speculative and premature.

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO REMAND

Until such time as the Court actually dismisses Plaintiffs' case with prejudice or Plaintiffs stipulate to such a result, there is no basis in fact for Plaintiffs to argue the case lacks subject matter jurisdiction. To be precise, let us consider the possible outcomes of the pending Motion to Dismiss.

If the Court denies the Motion, Plaintiffs' arguments regarding subject matter jurisdiction and Article III standing are irrelevant. If the Court grants the Motion with prejudice, Plaintiffs' argument regarding remand is moot. If the Court grants the Motion without prejudice, the Court does not automatically lose subject matter jurisdiction because Plaintiffs retain the ability to remedy their pleading defects. Contrary to Plaintiffs' characterization of the *Patton* and *Ogogo* cases, neither case holds that an order granting a 12(b)(6) motion to dismiss without prejudice automatically requires immediate remand.

In *Ogogo*, the court granted a motion to dismiss non-diverse defendants without prejudice yet <u>refrained</u> from granting remand until it determined if plaintiff would amend the complaint. *Ogogo v. JayKay, Inc.*, No. 2:18-CV-03203-JAM-DB, 2019 WL 2267193, at *6 (E.D. Cal. May 28, 2019) ("Absent amendment the court will remand the case"). The court refused to automatically grant remand, acknowledging that post-dismissal developments could affect whether the court retained subject matter jurisdiction. *Id*.

Plaintiffs' reliance on the *Patton* case is simply misplaced. In *Patton*, the defendant directly challenged jurisdiction, filing a FRCP 12(b)(1) motion. The court granted that motion with prejudice. (*Patton v. Experian Data Corp.*, No. SACV 15-1871 JVS (PLAx), 2016 U.S. Dist. LEXIS 60590, at *13 (C.D. Cal. May 6, 2016)). On that basis, the court made the unremarkable observation that remand was appropriate because the court immediately lost subject matter jurisdiction once it granted a motion to dismiss for lack of subject matter jurisdiction. (*Id*. at *4). But that observation is irrelevant to this case. Furthermore, Plaintiffs have conveniently omitted the full history of the *Patton* case.

Plaintiffs fail to mention that after the *Patton* case was remanded, the defendant again removed to federal court. The defendant then filed a further motion to dismiss, which was granted. Following that second motion to dismiss the plaintiff sought remand again, and that motion was denied. *Patton v. Experian Data Corp.*, No. SACV1701559JVSDFMX, 2018 WL 6190349, at *4 (slip op.) (C.D. Cal. Jan. 23, 2018) ("*Patton II*"). Clearly, an order granting a motion to dismiss is not a blanket prohibition against federal courts retaining jurisdiction. Each situation is unique and must be resolved on its individual merits.

In this case, the only possible scenario in which the Court might (arguably) lose subject matter jurisdiction is if the Court grants Defendant's Motion to Dismiss without prejudice and Plaintiffs then refuse to remedy the pleading defects resulting in the Court's order of dismissal. In this situation, the parties might then (again, arguably) become embroiled in a dispute as to whether it is appropriate for this Court to terminate the case, proceed with the case as to Plaintiffs' individual claims, or remand the case to state court. If that unlikely situation were to arise, Defendant would likely argue that remand to state court is inappropriate.[9] That complex scenario, however, is not currently before the Court, is not ripe for adjudication, and has not been briefed by either party. At this stage of the proceedings it is not necessary or appropriate for the Court to wade into such murky waters.

In any event, even if Plaintiffs were to obtain a post-dismissal remand following a dismissal without prejudice, Defendant would inevitably remove the case again (just as the court allowed in the *Patton* case) and seek sanctions against Plaintiffs for wasting judicial resources on a demonstrably pointless "jurisdictional ping-pong game." *See Polo v. Innoventions International, LLC*, 833 F.3d 1193, 1197 (9th Cir. Aug. 18, 2016) (noting that remand is discouraged in situations where plaintiff is simply delaying an eventual return to district court), (citing *United Steel, Paper &*

---

[9] Defendant specifically reserves the right to pursue and brief such an argument at a later date, if necessary.

21                     Case No. 2:20-cv-02503 ODW (MRWx)

*Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union v. Shell Oil Co.*, 602 F.3d 1087, 1091, 1092, n.3 (9th Cir. 2010)) (same).

Anticipating the observation that they are inviting a jurisdictional ping-pong game, Plaintiffs cite the *Patton* case in support of their argument that a defendant can never "re-remove" after a CAFA case has been remanded. (Mot. 15:8-10). But *Patton* says no such thing. *Patton* merely held that re-removal is impossible in certain circumstances – such as a case where the court has already held that the plaintiff lacks Article III standing and nothing changes to subsequently establish standing. (*Patton*, 2016 U.S. Dist. LEXIS 60590, at *4). But this was not a wholesale prohibition against removal after remand. Indeed, the defendant in the *Patton* case eventually <u>did</u> successfully re-remove the case and the court refused to re-remand the action. *Patton II*, 2018 WL 6190349, at *4.

In *Patton I*, the Court observed that re-removal would be pointless and inappropriate when there is nothing the parties can do to establish Article III standing. (2016 U.S. Dist. LEXIS 60590, at *17). This case presents the opposite scenario. Here, it would be pointless to remand after dismissal. Even if this Court grants Defendant's Motion to Dismiss because Plaintiffs failed to plead their claims with adequate specificity, at some point, Plaintiffs will have to clarify the factual basis for claims. When that happens, the basis for CAFA removal will still exist and Defendant will properly remove to federal court. Remanding Plaintiffs' case will achieve nothing but a waste of judicial and party resources.

## V.   <u>PLAINTIFFS MISSTATE THE FACTUAL RECORD</u>

Plaintiffs contend that Defendant offered to stipulate to an amount in controversy below $5 million in lieu of removal. (Mot. 6:20-24). Plaintiffs also contend that Plaintiffs agreed to such a stipulation. (*Id.*). Plaintiffs further contend that "Defendant then reneged on Defendant's own offer after Plaintiff accepted." (*Id.*)

Every one of these assertions is untrue. And if they were true, they would represent misconduct by Plaintiffs' counsel.

On March 4, 2020, at 9:53 a.m., counsel for Defendant sent an email *inquiring* if Plaintiffs would stipulate to an amount in controversy below $5 million. (Moses Decl., ¶ 5 Ex. A) ("[A]re Plaintiffs willing to enter into a stipulation that they will abandon and agree not to recover any amount over $4,999,999.99?")). This was not an agreement to be bound by anything or forgo filing a removal motion. It was a question. And it was a question to which Plaintiffs never provided a straightforward answer.

Plaintiffs' counsel provided their email response on March 6, 2020, at 12:53 p.m., stating: "I am interested in entertaining your stipulation that you proposed. In advance of reviewing this stipulation, could you please let me know the number of employees and workweeks in the class?" (Moses Decl., ¶ 6, Ex. B).

Defendant's counsel responded by email at 1:28 p.m., stating in pertinent part: "The answer will depend on how you are defining the class … we think the case should be limited to just auto techs." (Moses Decl., ¶ 7, Ex. C).

This dialogue concluded in an email of March 9, 2020, at 1:46 p.m., in which Plaintiffs' counsel: (i) explained that they intended to pursue a broad class definition; and (ii) equivocally stated, "I would say we can both safely assume without conjecture that the amount in controversy would be under $5 million." (Moses Decl., ¶ 8, Ex. D).

At no time did Plaintiffs agree, as Defendant requested, to "abandon and agree not to recover" more than $5 million. (Moses Decl., ¶¶ 8,9). Their counsel merely stated that the parties could "assume" that the AIC would be under $5 million. (*Id*.) Plaintiffs did not provide any justifications, calculations or evidence to support this non-binding "assumption" – and they certainly did not agree to bind themselves to that assumption.

At no time did Defendant or its counsel "renege" on any agreement. Defendant asked Plaintiffs for a simple answer to a straightforward question. Plaintiffs refused to be bound by an answer, and now attempts to tarnish Defendant's reputation by / / /

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO REMAND

fabricating a story about Defendant being a bad faith actor. It is disappointing that Plaintiffs would stoop to such mischaracterization.

Plaintiffs' fantasy is also legally irrelevant. As Plaintiffs' counsel is well-aware:

> The Supreme Court has held that when "a class action plaintiff … stipulates, prior to certification of the class, that he, and the class he seeks to represent, will not seek damages that exceed $5 million in total," *the district court should "ignore[] that stipulation"* when assessing the amount in controversy. [citation omitted] *This is so because although individual plaintiffs "are the masters of their complaints" and may "stipulat[e] to amounts at issue that fall below the federal jurisdictional requirement," the same is not true for a putative class representative, who "cannot yet bind the absent class*."

*Arias v. Residence Inn by Marriott*, 936 F.3d 920, 928-929 (9th Cir. Sept. 3, 2019) (emphasis added), (citing *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 590, 596, 133 S.Ct. 1345 (2013)).

It is unclear why Plaintiffs insist on arguing that they entered into a stipulation that they surely knew they lacked authority to negotiate on behalf of the putative class members they seek to represent.

## VI.   CONCLUSION

This case presents the same situations as those which this Court confronted in the *Marquez, Elizarraz,* and *Busker* actions. Here, Plaintiffs "could have alleged fact-specific allegations" sufficient to establish an amount in controversy below $5 million, but elected not to do so. Instead, Plaintiffs attempted to plead around the AIC by alleging that violations occurred from "time-to-time." But this Court has never before been distracted by such semantic games. Rather, this Court has a history of carefully considering the weight of the evidence placed before it, which is all Defendant asks in this case.

Defendant has provided the Court with hard data in support of its AIC calculations. This data was analyzed and validated by a Ph.D. in economics, and the results of that analysis was applied to violation rates premised on the plain language of Plaintiffs' Complaint, as well as well-settled case law. By contrast, Plaintiffs have failed to produce any evidence to refute Defendant's non-speculative and conservative

AIC calculations. Based on this record, the Court must find that Defendant has established – by a preponderance of the evidence – that the AIC has been satisfied and this case should properly stay in federal court. Accordingly, Defendant respectfully requests the Court deny Plaintiffs' Motion for Remand.

DATED: April 27, 2020                    OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.


By: /s/ Evan R. Moses
    Evan R. Moses
    Noel M. Hicks

Attorneys for Defendant
PENSKE TRUCK LEASING CO., LP

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO REMAND