**O**

# United States District Court
# Central District of California

ANGEL ZAMORA, GABRIEL LOAIZA and JORGE GUILLEN, individuals, on behalf of themselves and on behalf of all persons similarly situated,

Plaintiffs,

v.

PENSKE TRUCK LEASING CO., L.P., a Limited Partnership; and DOES 1 through 50, inclusive,

Defendants.

Case No. 2:20-cv-02503-ODW (MRWx)

**ORDER DENYING PLAINTIFFS' MOTION TO REMAND [12], GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS [11]**

## I.   INTRODUCTION

On January 31, 2020, Plaintiffs Angel Zamora, Gabriel Loaiza, and Jorge Guillen (collectively, "Plaintiffs") filed this class action in Los Angeles Superior Court against their employer, Defendant Penske Truck Leasing Co., L.P. ("Penske").  (Notice of Removal ("Notice"), Ex. A ("Compl."), ECF No. 1-1.)  On March 16, 2020, Penske removed this action to federal court pursuant to the Class Action Fairness Act, 28 U.S.C. §§ 1332, 1441, 1446, and 1453 ("CAFA").  (Notice ¶¶ 4–5, ECF No. 1.)  Plaintiffs now

move to remand this action for lack of subject matter jurisdiction. (Mot. to Remand ("MTR"), ECF No. 12.) Additionally, Penske moves to dismiss Plaintiffs' claims. (*See* Mot. to Dismiss ("MTD"), ECF No. 11.) For the reasons that follow, this Court **DENIES** Plaintiffs' Motion to Remand and **GRANTS in part** and **DENIES in part** Penske's Motion to Dismiss **with leave to amend**.[1]

## II.   BACKGROUND

Plaintiffs brought this class action against Penske on behalf of themselves and the class they seek to represent. Plaintiffs allege eight claims against Penske: (1) Unfair, Unlawful, and Deceptive Business Practices ("UCL claim"), (2) Failure to Pay Overtime Compensation, (3) Failure to Pay Minimum Wages, (4) Failure to Provide Required Meal Periods, (5) Failure to Provide Required Rest Periods, (6) Failure to Provide Accurate Itemized Statements, (7) Failure to Reimburse Employees for Required Expenses, and (8) Failure to Pay Wages When Due. (*See* Compl.) Notably, Plaintiffs do not allege a specific number of total violations or a specific amount in total damages. (*See* Compl., Prayer for Relief.)

Penske removed the action to this Court under CAFA and moved to dismiss Plaintiffs' claims under Federal Rule of Civil Procedure 12(b)(6). (*See generally* Notice; MTD.) Subsequently, Plaintiffs moved to remand the action on the basis that the aggregate amount in controversy ("AIC") does not meet the $5 million threshold required by CAFA. (*See generally* MTR.) Relevantly, along with its Opposition to Plaintiffs' Motion to Remand, Penske filed a Declaration by Joseph A. Krock, Ph.D. to support its contention that the AIC exceeds $5 million. (Decl. of Joseph A. Krock, Ph.D. ("Krock Decl."), ECF No. 15-2.) Plaintiffs object to the Krock Declaration and request that it be stricken. (Objs. & Req. to Strike Krock Decl. ("Req. to Strike"), ECF No. 16-1.)

---

[1] After carefully considering the papers filed in connection with the Motion to Remand and Motion to Dismiss, the Court deems the matters appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

### III.    REQUEST FOR JUDICIAL NOTICE

In connection with its Opposition to the Motion to Remand and its Reply in support of its own Motion to Dismiss, Penske requests that the Court take judicial notice of various orders and pleadings from other unrelated cases with similar questions of law.  (Req. for Judicial Notice re Opp'n to MTR, ECF No. 15-4; Req. for Judicial Notice re Reply ISO MTD, ECF No. 17-1.)  Courts can take judicial notice of "proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue."  *United States ex rel. Robinson Rancheria Citizens Counsel v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992); *see Holder v. Holder*, 305 F.3d 854, 866 (9th Cir. 2002).  However, the Court does not rely on the proffered court documents to resolve the present motions, nor would they affect the outcome.  Therefore, the Court **DENIES** Penske's requests for judicial notice as moot.

### IV.    PLAINTIFFS' MOTION TO REMAND

First, the Court assesses whether to grant Plaintiffs' Motion to Remand.  The only issue presented here is whether the AIC meets CAFA's $5 million jurisdictional requirement.[2]  Penske alleges that the AIC is at least $21,862,122.50.  (Opp'n to MTR 23.)  Plaintiffs contend that Penske has failed to show by a preponderance of the evidence that the AIC is at least $5 million.  (*See* MTR; Reply ISO MTR.)  Notably, however, Plaintiffs do not allege any specific amount for damages.

### A.    Legal Standard

Federal courts have subject matter jurisdiction only as authorized by the Constitution and Congress.  U.S. Const. art. III, § 2, cl. 1; *see also Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994).  Under CAFA, such jurisdiction exists in "mass action" suits if the following requirements are met: (1) 100 or more plaintiffs; (2) common questions of law or fact between plaintiffs' claims; (3) minimal

---

[2] Plaintiffs also argue that Penske's MTD necessarily relies on an argument that the Court lacks subject matter jurisdiction.  (MTR 14–17.)  This argument is not persuasive.  Penske's MTD under Rule 12(b)(6) does not appear to challenge Article III standing or any other jurisdictional requirement; Penske merely argues that allegations regarding the injury were not pled with sufficient detail.

diversity, where at least one plaintiff is diverse from one defendant; (4) there is an AIC in excess of $5 million; and (5) at least one plaintiff's claim exceeding $75,000. 28 U.S.C. § 1332(d); *Abrego v. Dow Chem. Co.*, 443 F.3d 676, 689 (9th Cir. 2006). However, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction [over a case removed from state court], the case shall be remanded." 28 U.S.C § 1447(c).

The first step in determining an AIC is to look to the complaint. *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015). "Whether damages are unstated in a complaint, or, in the defendant's view are understated, the defendant seeking removal bears the burden to show by a preponderance of the evidence that the aggregate amount in controversy exceeds $5 million when federal jurisdiction is challenged." *Id.*; *but see Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014) ("[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold."). When plaintiffs challenge the AIC asserted by the defendant, "both sides are obligated to submit proof for the court to determine, by a preponderance of the evidence, whether the AIC has been established." *Dart Cherokee*, 574 U.S. at 82. Importantly, courts cannot establish jurisdictional determinations on "speculative and self-serving assumptions about key unknown variables" that are not clearly suggested by the pleadings or supported by evidence. *Garibay v. Archstone Communities LLC*, 539 F. App'x 763, 764 (9th Cir. 2013). The parties may prove the AIC by way of affidavits, declarations, or other summary-judgment type evidence. *Ibarra*, 775 F.3d at 1197 (citing *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997)); *Ray v. Wells Fargo Bank, N.A.*, No. CV 11-01477 AHM (JCx), 2011 WL 1790123, at *6. (C.D. Cal. May 9, 2011).

**B.   Discussion**

The Court considers whether Penske has shown by a preponderance of the evidence that the AIC is greater than $5 million.

4

1          1.    <u>Plaintiffs' Request to Strike the Krock Declaration</u>

2        As a preliminary matter, Plaintiffs ask the Court to strike the Krock Declaration

3 on the grounds that Penske failed to properly designate Dr. Krock as an expert witness

4 and that Plaintiffs did not get the opportunity to cross-examine or otherwise challenge

5 Dr. Krock's credibility.  (Req. to Strike 1.)  Plaintiffs also object to the Krock

6 Declaration insofar as the calculations within it rely on assumed violation rates provided

7 to Dr. Krock by Defendant itself.  (Req. to Strike 1.)

8        First, Plaintiffs incorrectly conflate the requirements for relying on expert

9 testimony in a trial with the requirements for establishing an AIC for jurisdictional

10 purposes.  Plaintiffs rely on *Reed v. Sandstone Properties, L.P.*, No. CV 12-05021

11 MMM (VBKx), 2013 U.S. Dist. LEXIS 51437 (C.D. Cal. Apr. 2, 2013), to argue that

12 Defendant should have adhered to the rules for designating Dr. Krock as an expert

13 witness.  (Req. to Strike 1.)  But the issue in *Reed* did not concern the calculation of an

14 AIC; there, the defendants failed to provide a copy of their expert's report until after the

15 initial expert discovery deadline had passed, and the plaintiff protested.  *Reed*, 2013

16 U.S. Dist. LEXIS 51437, at *9–10.  Here, *Reed* is inapposite because discovery cutoffs

17 are not at issue.  Rather, what is significant is that Plaintiffs do not specify an AIC in

18 the Complaint, yet they contest Penske's estimations.  (*See generally* Compl.; MTR.)

19 Consequently, both Plaintiffs and Penske are "obligated to submit proof for the court to

20 determine, by a preponderance of the evidence, whether the AIC has been established."

21 *Dart Cherokee*, 574 U.S. at 82.  And for the limited purpose of attempting to prove the

22 AIC, Penske's reliance on the Krock Declaration is procedurally proper.  *See Ibarra*,

23 775 F.3d at 1197; *Ray*, 2011 WL 1790123, at *6.

24        Second, Plaintiffs' foundational objections are unconvincing.  Dr. Krock, an

25 economist and consultant, leads the "Economic Consulting Practice" of the consulting

26 firm for which he works.  (Krock Decl. ¶¶ 1, 3.)  Dr. Krock holds master and doctorate

27 degrees in economics from the University of Chicago and a bachelor's degree in

28 economics-mathematics from the University of California, Santa Barbara, and he has

over nineteen years of experience in calculating liability and damages in wage and hour class action lawsuits.  (Krock Decl. ¶¶ 2, 4.)  Dr. Krock also declared that to calculate the AIC, he was provided with Penske's weekly payroll data, daily hours worked data, and termination data for the period from 2016 to 2020.  (Krock Decl. ¶ 9.)  Based on these declarations, the Court finds that Dr. Krock has established sufficient foundation for his testimony.  He is an experienced and credentialed economist who specializes in applying advanced statistical techniques to labor and employment litigation matters, and he was provided the relevant data in relation to this case.  Penske may rely on the Krock Declaration to attempt to establish the AIC.  *See, e.g.*, *Elizarraz v. United Rentals, Inc.*, Case No. 2:18-CV-09533-ODW (JCx), 2019 WL 1553664, at *3–4 (C.D. Cal. Apr. 9, 2019) (finding defendants' AIC calculations supported by similar declaration calculations).

Notwithstanding the above, Plaintiffs correctly note that the calculations set forth in the Krock Declaration are based on *assumed* violation rates.  (*See* Req. to Strike; Reply ISO MTR.)  And as explained below, assumed violation rates must be reasonable for the calculations to be credible.  However, not all assumed violation rates are *per se* unreasonable, nor is the fact that the Krock Declaration relies on assumed violation rates a basis for striking it from the record.   Accordingly, Plaintiffs' objections are **OVERRULED**, and their request to strike the Krock Declaration is **DENIED**.

2. <u>Penske's 10% Violation Rates Are Reasonable</u>

Plaintiffs argue that Penske's claimed AIC relies on the assumption of "completely arbitrary and unsubstantiated violation rates . . . ."  (Reply ISO MTR 4.) In wage-and-hour cases such as this one, "violation rates are key to the calculations necessary to reach the [$5 million] amount-in-controversy figure CAFA requires." *Toribio v. ITT Aerospace Controls LLC*, No. 19-CV-5430-GW (JPRx), 2019 WL 4254935, at *2 (C.D. Cal. Sept. 5, 2019).  A defendant attempting to establish an AIC

by a preponderance of the evidence may do so by assuming the frequencies of violations, but those assumptions must be reasonable. *See Ibarra*, 775 F.3d at 1199.

In determining the reasonableness of an assumed violation rate, "the Ninth Circuit distinguishes between complaints of 'uniform' violations and those alleging a 'pattern and practice' of labor law violations." *Dobbs v. Wood Grp. PSN, Inc.*, 201 F. Supp. 3d 1184, 1188 (E.D. Cal. 2016) (citing *La Cross v. Knight Trans. Inc.*, 775 F.3d 1200, 1202 (9th Cir. 2015)). When a complaint alleges "uniform" violations, it might be reasonable to assume a 100% violation rate if "the plaintiff offers no competent evidence in rebuttal." *Dobbs*, 201 F. Supp. 3d at 1188. But when a complaint alleges a "pattern and practice" of labor law violations, a 100% violation rate is unreasonable; the assumed violation rate must be lower. *See Id.*; *Ibarra*, 775 F.3d at 1198–99 ("[A] 'pattern and practice' of doing something does not necessarily mean *always* doing something." (emphasis in original)). For instance, numerous courts have found violation rates between 25% to 60% to be reasonable based on "pattern and practice" and "policy and practice" allegations. *Castillo v. Trinity Servs. Grp., Inc.*, No. 1:19-cv-01013 DAD (EPGx), 2020 WL 3819415, at *7 (E.D. Cal. July 8, 2020) (citing cases); *see, e.g.*, *Elizarraz*, 2019 WL 1553664, at *3–4 (finding a 50% violation rate for missed meal periods and a 25% violation rate for missed rest periods reasonable based on "pattern and practice" allegations); *Oda v. Gucci Am., Inc.*, Nos. 2:14-CV-7468-SVW (JPRx), 2015 WL 93335, at *5 (C.D. Cal. Jan. 7, 2015) (finding a 50% violation rate reasonable based on "pattern and practice" allegations).

Here, Plaintiffs repeatedly allege in their Complaint that Penske engaged in a "policy and practice" of various labor law violations. (*See* Compl. ¶¶ 7, 11, 13, 19, 26, 28(a), 28(b), 29(c), 30(b)(1), 40(c), 48, 50, 64, 65, 72, 80, 81, 86, 90.) Based on Plaintiffs' use of "policy and practice" language, Penske contends that the amounts in controversy for Plaintiffs' missed meal period claims, missed rest break claims, and unpaid overtime claims equal $2,718,313, $2,751,122, and $2,057,665, respectively. (Opp'n to MTR 6, 11.) These calculations rely on assumed violation rates of 10% each.

(*See* Krock Decl. ¶¶ 23–35.) As explained above, numerous courts have found violation rates as high as 60% to be reasonable to calculate the amount in controversy when allegations represent a "pattern and practice" or "policy and practice" of labor law violations. A 10% violation rate is noticeably more conservative than what is often accepted as reasonable. Since these claims alone put the AIC over the jurisdictional threshold the Court declines to analyze whether the remainder of Plaintiffs' claims satisfy the AIC.

Notwithstanding their "policy and practice" allegations, Plaintiffs point to their use of "from time to time" language in the Complaint to argue that even 10% violation rates are unreasonable. (Reply ISO MTR 3–7.) But Plaintiffs fail to explain why their use of "from time to time" language should trump their use of "policy and practice" language in the Complaint. Moreover, the numerous cases Plaintiffs cite do not support their position. For instance, *Rivers*, *Cummings*, and *Sanders* teach that allegations based on "from time to time" language, without more, do not justify assuming a 100% violation rate. *See*, *Rivers v. Veolia Transp. Servs.*, No. 14-CV-2594 YGR, 2014 U.S. Dist. LEXIS 111705, at *12 (N.D. Cal. Aug. 11, 2014); *Cummings v. G6 Hospitality, LLC*, No. 19-CV-00122-GPC-LL, 2019 U.S. Dist. LEXIS 56719, at *10 (S.D. Cal. Apr. 2, 2019); *Sanders v. Old Dominion Freight Line, Inc.*, No. 16-CV-2837-CAB-NLS, 2017 U.S. Dist. LEXIS 15936, at *13–14 (S.D. Cal. Feb. 2, 2017). This proposition is unhelpful for Plaintiffs here, where Penske has assumed 10%—not 100%—violation rates with respect to Plaintiffs' meal period, rest break, and overtime claims.

Similarly, *Rodriguez*, *Salazar*, and *Brown* did not involve "policy and practice" allegations. *See Rodriguez v. Circle K Stores Inc.*, No. ED CV 19-0469 FMO (SPx), 2019 U.S. Dist. LEXIS 115701 (C.D. Cal. July 11, 2019) (analyzing a complaint that only alleged meal and rest break violations "from time to time"); *Salazar v. Johnson & Johnson Consumer Inc.*, No. 2:18-CV-05884-SJO-E, 2018 U.S. Dist. LEXIS 161293, at *13 (C.D. Cal. Sept. 19, 2018) (rejecting the assumption of a 20% violation rate where the only allegations were of "periodic" violations); *Brown v. United Airlines,*

*Inc.*, No. 19cv537-MMA (JLB), 2019 U.S. Dist. LEXIS 113854 (rejecting assumed violation rate of missed meal periods and rest breaks where the only allegation was that violations occurred "from time to time"). Thus, these cases are distinguishable on their facts from the present action.

*Perez*, *Gonzalez* and *Rodriguez* teach that assumed violation rates must be "grounded in specific facts regarding [the] Plaintiff's work schedule and salary." *See Perez v. WinnCompanies, Inc.*, No. 1:14-cv-01497 LJO (JLTx), 2014 U.S. Dist. LEXIS 158748, at \*11 (E.D. Cal. Nov. 10, 2014) (alteration in original) (quoting *Patel v. Nike Retail Servs.*, No. 14-cv-00851-JST, 2014 U.S. Dist. LEXIS 98918, at \*13–22 (N.D. Cal. July 21, 2014) (rejecting unexplained assumption of five unpaid overtime hours per week"); *Gonzalez v. Hub Int'l Midwest Ltd.*, No. ED CV 19-557 PA (ASx), 2019 U.S. Dist. LEXIS 79672, at \*8–13 (C.D. Cal. May 10, 2019) (rejecting unexplained violation rates of five overtime hours, three missed meal periods, and three missed rest periods per week); *Rodriguez*, 2019 U.S. Dist. LEXIS 115701, at \*9 (finding a violation rate of one missed meal period and one missed rest break per week unsupported by any facts). However, these cases do not change the outcome here because Penske's assumed violation rates *are* grounded in specific facts regarding the Plaintiffs' work schedules and salaries. Rather than assuming per-week violation rates without discussing any other facts to support the inference that such assumptions are reasonable, Dr. Krock's Declaration explains how his calculations took into account the frequencies at which employees earned the right to meal periods, rest breaks, and overtime pay, and in all cases "utilized each employee's lowest hourly wage rate to determine the value" of the claims. (Krock Decl. ¶¶ 23–35.) Although Penske's assessments of the AIC "may require a chain of reasoning that requires assumptions," these numbers do not appear to have been "pulled from thin air." *Ibarra*, 775 F.3d at 1199.

Ultimately, Plaintiffs do not allege any specific AIC, either in the Complaint or otherwise. They simply argue that Penske has failed to prove the AIC by a preponderance of the evidence because Penske's assumed violation rates are

unreasonable.  However, Penske's assumed violation rate of 10% is reasonable in light of Plaintiffs' allegations that Penske engaged in a "policy and practice" of various labor law violations, and the evidence submitted, calculating the amount in controversy using figures reasonably grounded in specific facts regarding the employees' work schedules and salaries.  Thus, the Court finds that Penske has shown by a preponderance of the evidence that the AIC exceeds $5 million.  Since these claims alone put the AIC over the jurisdictional threshold, the Court declines to analyze whether the remainder of Plaintiffs' claims satisfy the AIC.  As all other jurisdictional requirements are satisfied, the Court **DENIES** Plaintiffs' Motion to Remand.  (ECF No. 12.)

## V.   PENSKE'S MOTION TO DISMISS

Having denied Plaintiffs' Motion to Remand, the Court now turns to Penske's Motion to Dismiss.  Penske moves to dismiss claims one through eight of the Complaint and Plaintiffs' class allegations on the grounds that Plaintiffs fail to state a claim upon which relief can be granted.  (*See generally* MTD.)

## A.   Legal Standard

Dismissal under Rule 12(b)(6) "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  "To survive a motion to dismiss . . . under Rule 12(b)(6), a complaint generally must satisfy only the minimal notice pleading requirements of Rule 8(a)(2)"—a short and plain statement of the claim.  *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003); *see also* Fed. R. Civ. P. 8(a)(2).  The "[f]actual allegations must be enough to raise a right to relief above the speculative level."   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).   The "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"   *Id.* (citing *Twombly*, 550 U.S. at 555).  Whether a complaint satisfies the plausibility standard is

"a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.  A court is generally limited to the pleadings and must construe "[a]ll factual allegations set forth in the complaint . . . as true and . . . in the light most favorable to [the plaintiff]." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (internal quotation marks omitted).  But a court need not blindly accept conclusory allegations, unwarranted deductions of fact, or unreasonable inferences.  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

As a general rule, a court should freely give leave to amend a complaint that has been dismissed unless it is clear the complaint could not be saved by any amendment. *See* Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  Leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency" or, in other words, if amendment would be futile.  *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986); *Carrico v. City of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011).

**B.    Discussion – Motion to Dismiss**

Penske's primary argument is that Plaintiffs fail to allege any facts in support of their claims.  (MTD 2.)  The Court addresses each claim below.

*1.    Unpaid Overtime, Minimum Wage, Meal Period, and Rest Break Claims (Claims 2–5)*

Penske urges that Plaintiffs' second, third, fourth, and fifth claims, based on failure to pay overtime and minimum wages and failure to provide meal periods and rest breaks, do not meet the pleading standard established in *Landers v. Quality Communications, Inc.*, 771 F.3d 638 (9th Cir. 2014).  (MTD 8–13.)  Penske is correct.

"Under *Landers*, in order to sufficiently state claims for violations of the California Labor Code, a plaintiff must, at a minimum, 'be able to allege facts demonstrating that there was at least one workweek' or one specific instance in which the defendant violated the plaintiff's rights under the California Labor Code." *Johnson*

*v. Winco Foods, LLC*, ED CV 17-2288 DOC (SHKx), 2018 WL 6017012, at *5 (C.D. Cal. Apr. 2, 2018) (quoting *Landers*, 771 F.3d at 646); *see also Boyack v. Regis Corp.*, No. 19-55279, 2020 WL 2111464, at *1 (9th Cir. May 4, 2020) (affirming the district court's dismissal of plaintiffs' overtime and minimum wage claims when plaintiffs' complaint failed to allege a workweek in which they worked overtime and were not compensated).   "[M]ere conclusory allegations that class members 'regularly' or 'regularly and consistently' worked more than 40 hours per week—without any further detail—fall short of *Twombly/Iqbal*."  *Tan v. GrubHub, Inc.*, 171 F. Supp. 3d 998, 1007 (N.D. Cal. 2016) (citing *Landers*, 771 F.3d at 646; *Perez v. Wells Fargo & Co.*, 75 F. Supp. 3d 1184, 1191 (N.D. Cal. 2014).  Similarly, absent an allegation of "at least one meal or rest break where [a plaintiff] worked through the break and was not paid for that time" or "a given instance where [d]efendant failed to provide him a meal or rest break in compliance with state law," a claim based on the defendant's failure to provide such meal or rest breaks does not meet the *Twombly/Iqbal* standard.  *Freeman v. Zillow, Inc.*, No. SACV 14-01843-JLS (RNBx), 2015 WL 5179511, at *5 (C.D. Cal. Mar. 19, 2015).

Here, Plaintiffs' second through fifth claims fall well within the scope of what *Landers* and other cases have shown to be insufficient.  (*See* Compl. ¶¶ 59–73, 76–87, 90–91, 94–95.)  Plaintiffs include no relevant facts or dates during which these alleged violations occurred, and instead merely recite the statutory language in conclusory manners.  (*Compare, e.g.*, Compl. ¶ 65 (stating that Penske implemented a policy and practice "that denied accurate compensation to Plaintiffs . . . for all overtime worked, including the work in excess of eight (8) hours in a workday and/or forty (40) hours in any workweek"), *with* Cal. Lab. Code § 510 ("[A]ny work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek . . . shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee.").)  All of Plaintiffs' allegations with respect to these claims read the same way.  As illustrated by the cases cited above, such conclusory claims "without

factual allegations about Plaintiffs' specific experiences . . . are merely 'conceivable,' not 'plausible.'" *Santorio v. Tesoro Refin. & Mktg. Co., LLC*, No. CV 17-1554-MWF (RAOx), 2017 WL 1520416, at *6 (C.D. Cal. Apr. 26, 2017).

Accordingly, the Court **DISMISSES** Plaintiffs' second, third, fourth, and fifth claims **with leave to amend**.

### 2.    *Itemized Wage Statements and Failure to Pay Wages at Termination (Claims 6 and 8)*

Plaintiffs' sixth and eighth claims for failure to provide accurate itemized wage statements and failure to pay wages upon termination are derivative of Plaintiffs' second through fifth claims.   Specifically, Plaintiffs allege that Penske "fails to provide PLAINTIFFS . . . with complete and accurate wage statements which failed to show, among other things, the correct gross and net wages earned and correct amount of time worked," (Compl. ¶ 99), and that "[t]he employment of Plaintiff[s] . . . has terminated and DEFENDANT has not tendered payment of wages, to these employees who missed meal and rest breaks," (Compl. ¶ 110.).

Plaintiffs' sixth and eighth claims are dependent on claims that this Court dismissed above.   Thus, the Court **DISMISSES** Plaintiffs' sixth and eighth claims **with leave to amend**.   *See Ortiz v. Amazon.com LLC*, No. 17-CV-03820-JSW, 2017 WL 11093812, at *5 (N.D. Cal. Oct. 10, 2017) (dismissing plaintiff's claims for inaccurate wage statements and failure to pay wages upon termination because they were derivative of dismissed overtime and meal and rest period claims); *Johnson*, 2018 WL 6017012, at *17 (dismissing similar claims because they were derivative of dismissed claims for unpaid overtime, minimum wage, and meal and rest break premiums).

### 3.    *Failure to Reimburse Business Expenses (Claim 7)*

Penske argues that Plaintiffs' seventh claim, failure to reimburse business expenses, does not provide any plausible factual basis upon which relief can be granted because Plaintiffs "do not identify *what type of items* should be reimbursed . . . or *why such items were appropriate* for reimbursement."   (MTD 6 (emphasis added).)

Plaintiffs respond that Penske's argument overlooks certain of Plaintiffs' allegations. (Opp'n to MTD 13.)  Plaintiffs are correct.

As Penske appears to concede, an allegation for failure to reimburse necessary business expenses is generally sufficient if it at least identifies the type of necessary business expenses that were not reimbursed.  (*See* MTD 6.)  *See, e.g.*, *Saunders v. Ameriprise Fin. Servs., Inc.*, No. CV 18-10668-MWF (AFMx), 2019 WL 4344296, at *5 (C.D. Cal. Mar. 19, 2019) (denying motion to dismiss claim that plaintiffs "utilized their own monies for necessary expenditures incurred in the discharge of [their] duties, including . . . the costs of the wages of support staff, the costs associated with internal referrals of business, and ordinary business expenses" (bracketed alteration in original)); *Dawson v. Hitco Carbon Composites, Inc.*, No. CV16-7337 PSG (FFMx), 2017 WL 7806358, at *6 (C.D. Cal. May 5, 2017) (denying motion to dismiss claim that the defendant failed to reimburse "the use of personal phones for business-related purposes and costs incurred to comply with [d]efendants' dress code, including the costs of purchasing protective footwear").

Here, Plaintiffs allege that they "are required by [Penske] to purchase and supply their own tools and equipment that are necessary to perform services as auto technicians for [Penske]." (Compl. ¶ 102.)  They further allege that Penske "requires [Plaintiffs] to supply their own tools and equipment to perform services for [Penske] but fails to reimburse for such expenses, or, in the alternative, pay [Plaintiffs] at least two time [sic] the minimum wage." (Compl. ¶ 102.)  Although Plaintiffs do not list every tool or piece of equipment necessary to perform their job, they sufficiently allege a plausible claim for relief.  Thus, the Court **DENIES** Penske's Motion to Dismiss as to Plaintiffs' seventh claim.

### 4.   *UCL Claim (Claim 1)*

Penske moves to dismiss Plaintiffs' UCL claim on the ground that it is "entirely derivative of their faulty meal period, rest break, unpaid wage, and failure to reimburse business expenses claims."  (MTD 14–15.)  It is true that Plaintiffs' UCL claim is

derivative of other claims, and to the extent those other claims are dismissed, the derivative UCL claim also fails. *See, e.g.*, *Estrada v. Kaiser Found. Hosps.*, 678 Fed. App'x 494, 497 (9th Cir. 2017); *Ortiz*, 2017 WL 11093812, at *5. However, Plaintiffs' UCL claim is also derivative of their failure to reimburse business expenses claim, which is sufficiently pled. Accordingly, the Court **DISMISSES** Plaintiffs' first claim **with leave to amend** insofar as it relies on the allegations dismissed above, but the Court otherwise **DENIES** Penske's Motion to Dismiss with respect to this claim. *See Johnson*, 2018 WL 6017012, at *20.

> 5. *Class Allegations*

Penske urges the Court to dismiss Plaintiffs' class allegations under Rule 12(b)(6) by pointing out that "courts may address the adequacy of class action allegations under *Iqbal* and *Twombly* on a motion to dismiss." (MTD 15.) However, the Ninth Circuit has yet to adopt this theory of class action pleading, and other courts have expressly disagreed with it. *See, e.g., Morelli v. Corizon Health, Inc.*, No. CV 18-01395-LJO (SABx), 2019 WL 918210, at *13 (E.D. Cal. Feb. 25, 2019) ("Because class actions are procedural devices and not claims for relief under Rule 8, it is incongruent to impose a Rule 8 pleading standard to the elements of class certification such as commonality or typicality."); *Meyer v. Nat'l Tenant Network, Inc.*, 10 F. Supp. 3d. 1096, 1104 (N.D. Cal. 2014) (denying motion to dismiss class claims because "such arguments are more appropriately addressed through Rule 23 for procedural reasons"); *Moreno v. Baca*, No. CV 00-7149-ABC (CWx), 2000 WL 33356835, at *2. (C.D. Cal. Oct. 13, 2000) ("Generally, the Court reviews the class allegations through a motion for class certification."). Indeed, an order striking class allegations is functionally equivalent to an order denying class certification. *Microsoft v. Baker*, 137 S. Ct. 1702, 1711 n.7 (2017). The Court chooses not to resolve the question of class certification at this juncture. Accordingly, the Court **DENIES** Penske's Motion to Dismiss as to Plaintiffs' class allegations.

**VI.    CONCLUSION**

In summary, the Court **DENIES** Plaintiffs' Motion to Remand (ECF No. 12) and **GRANTS in part** and **DENIES in part** Penske's Motion to Dismiss (ECF No. 11), as detailed above.

**IT IS SO ORDERED.**

August 17, 2020

_____

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**

16